1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   FRANK FALZETTA, Cal. Bar No. 125146
3  JENNIFER M. HOFFMAN, Cal. Bar No. 240600
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071-1422
   Telephone:    213.620.1780
5  Facsimile:    213.620.1398
   E-mail:        ffalzetta@sheppardmullin.com
6                 jhoffman@sheppardmullin.com

7  JEFFREY S. CROWE, Cal. Bar No. 216055
   650 Town Center Drive, 4th Floor
8  Costa Mesa, CA 92626-1993
   Telephone:    714.424.8231
9  Facsimile:    714.428.5997
   E-mail:        jcrowe@sheppardmullin.com

10
   Attorneys for Defendant
11 **STATE FARM GENERAL INSURANCE
   COMPANY**

12

13                    UNITED STATES DISTRICT COURT

14        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15 | BRIAN and ALISON SHEAHAN, as husband | Case No. 3:18-cv-06186-EMC |
   and wife; DOUGLAS POPE, an individual;

16 NEIL and SANDRA WYLIE, as husband and | **DEFENDANT STATE FARM GENERAL**
   wife; et al.,                          | **INSURANCE COMPANY'S:**

17
                   Plaintiffs,            | **(1)    NOTICE OF MOTION AND**
18                                        |         **MOTION TO DISMISS**
            v.                            |         **PLAINTIFFS' SECOND**
19                                        |         **AMENDED COMPLAINT;**
   STATE FARM GENERAL INSURANCE
20 COMPANY, an Illinois company; VERISK   | **(2)    MEMORANDUM OF POINTS**
   ANALYTICS, Inc., INSURANCE SERVICES    |         **AND AUTHORITIES; AND,**
21 OFFICE, Inc., and XACTWARE
   SOLUTIONS, Inc., Delaware Corporations, all | **(3)    EXHIBITS 1 AND 2, PURSUANT**
22 doing business in California; and DOES 1 to |         **TO THE "INCORPORATION BY**
   100,                                   |         **REFERENCE" DOCTRINE.**
23
                   Defendants.            | [Proposed Order submitted concurrently
24                                        | herewith]

25                                        | Date:         June 27, 2019
                                          | Time:         1:30 p.m.
26                                        | Courtroom:    5
                                          | Judge:        Hon. Edward M. Chen
27
                                          | Trial Date:   N/A
28

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on June 27, 2019, at 1:30 p.m. in Courtroom 5 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant State Farm General Insurance Company ("State Farm") will, and hereby does, move the Court, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the Second Amended Complaint ("SAC") filed by plaintiffs Brian and Alison Sheahan (the "Sheahans"), Neil and Sandra Wylie (the "Wylies"), and Douglas Pope (Mr. Pope, the Sheahans and the Wylies are collectively referred to herein as the "Plaintiffs").

The Motion should be granted because Plaintiffs have either failed to adequately allege facts supporting their claims, or their claims are barred by California law.  Fed. R. Civ. Proc. 12(b)(6).  Thus, State Farm moves to dismiss Plaintiffs' entire SAC, including the First through Thirteenth Causes of Action for:  (1) Breach of the Implied Covenant of Good Faith and Fair Dealing; (2) Intentional Misrepresentation; (3) False Promise; (4) Negligent Misrepresentation; (5) Negligence; (6) Reformation; (7) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (8) Violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.*; (9) Violation of the Unfair Insurance Practices Act, Cal. Ins. Code § 790.03; (10) Violation of the Sherman Act – Cartel; (11) Violation of the Sherman Act – Monopoly; (12) Violation of the Sherman Act – Conspiracy; and (13) Violation of the "California Products Liability Act."

State Farm bases its Motion upon this Notice, the attached Memorandum of Points and Authorities, the Sheahans' attached Policy (Exhibit 1) and Rebuild Estimate (Exhibit 2) under the "incorporation by reference" doctrine, the concurrently filed Proposed Order, all other pleadings, papers and records on file in this action, those matters of which this Court may take judicial notice, and upon the oral argument of counsel made at the hearing, if any, on this Motion.

Dated:  March 8, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
*/s/ Frank Falzetta*

FRANK FALZETTA
Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................3

I.    INTRODUCTION AND STATEMENT OF ISSUES .............................................3

II.   ALLEGATIONS OF PLAINTIFFS' COMPLAINTS .............................................5

III.  PLAINTIFFS MUST ALLEGE *FACTS*, NOT LEGAL CONCLUSIONS, TO
      SURVIVE A MOTION TO DISMISS.................................................................8

IV.   PLAINTIFFS' CONCLUSORY ALLEGATIONS FAIL TO STATE A VALID
      CLAIM ............................................................................................................9

      A.   Plaintiffs Fail to State a Bad Faith Claim (Count 1) ...............................9

      B.   Plaintiffs Do Not Allege Facts Supporting their Misrepresentation and
           Reformation Claims (Counts 2-4, 6) .....................................................10

      C.   Plaintiffs' Negligence Claim Fails (Count 5)..........................................15

      D.   Plaintiffs' UCL Claim Fails (Count 7) ...................................................16

           1.   Plaintiffs Do Not Adequately Allege a UCL Claim....................16

           2.   Plaintiffs Seek Impermissible Relief Under their UCL Claim...................17

      E.   The Unfair Insurance Practices Act Claim Fails (Count 9) .....................19

      F.   Plaintiffs' Antitrust Claims Fall Short (Counts 8, 10, 11, & 12) ............19

           1.   Plaintiffs Do Not Allege "Antitrust Injury" ...............................19

           2.   Plaintiffs Do Not State a Section 1 Claim...................................20

           3.   Plaintiffs Fail to State a Section 2 Claim ...................................22

           4.   Plaintiffs Do Not State a Cartwright Act Claim..........................23

      G.   Plaintiffs' "California Products Liability Act" Claim Fails (Count 13)...................24

V.    CONCLUSION .............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*A White and Yellow Cab, Inc. v. Uber Techs., Inc.*
   2017 WL 1208384 (N.D. Cal. 2017).................................................................24

*Adamo v. Fire Ins. Exch.*
   219 Cal.App.4th 1286 (2013).....................................................................15

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)...............................................................................9

*Association of Cal. Ins. Cos. v. Jones*
   2 Cal.5th 376 (2017).............................................................................17

*Atl. Richfield Co. v. USA Petroleum Co.*
   495 U.S. 328 (1990).............................................................................19

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1990)......................................................................9

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*
   166 F.Supp.3d 988 (N.D. Cal. 2015) .............................................................21

*Bell Atlantic v. Twombly*
   550 U.S. 544 (2007) ..........................................................................9, 21

*Brantley v. NBC Universal, Inc.*
   675 F.3d 1192 (9th Cir. 2012)................................................................20, 22

*Broberg v. Guardian Life Ins. Co.*
   171 Cal.App.4th 912 (2009)......................................................................25

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*
   509 U.S. 209 (1993).............................................................................23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
   429 U.S. 477 (1977).............................................................................19

*Civil Service Employers Ins. Co. v. Superior Court*
   22 Cal.3d 362 (1978).............................................................................25

*County of Toulumne v. Sonora Community Hosp.*
   236 F.3d 1148 (9th Cir. 2011)....................................................................23

*Davidson v. Kimberly Clark Corp.*
   76 F.Supp.3d 964 (N.D. Cal. 2014) .............................................................16

*Dimidowich v. Bell & Howell*
   803 F.2d 1473 (9th Cir. 1986)................................................................23

*Everett v. State Farm Gen. Ins. Co.*
   162 Cal.App.4th 649 (2008)...............................................12, 14, 15, 18

*Fairbanks v. Superior Court*
   46 Cal.4th 56 (2009)...........................................................................24

*Feitelson v. Google Inc.*
   80 F.Supp.3d 1019 (N.D. Cal. 2015) ................................................24

*Fitzpatrick v. Hayes*
   57 Cal.App.4th 916 (1997)............................................................15, 16

*Fox v. Pollack*
   181 Cal.App.3d 954 (1986) ...............................................................13

*Gasnik v. State Farm Ins. Co.*
   825 F.Supp. 245 (E.D. Cal. 1992) .......................................................9

*Gibson v. Gov't Employees Ins. Co.*
   162 Cal.App.3d 441 (1984)............................................................9, 15

*In re Glenfed, Inc. Sec. Lit.*
   42 F.3d 1541 (9th Cir. 1994)..............................................................10

*Graham v. Bank of American, N.A.*
   226 Cal.App.4th 594 (2014)...............................................................12

*Hackethal v. National Casualty Co.*
   189 Cal.App.3d 1102 (1987)..............................................................18

*Hadland v. NN Investors Life Ins. Co.*
   24 Cal.App.4th 1578 (1994)...............................................................14

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*
   220 F.Supp.3d 1008 (N.D. Cal. 2016) ..............................................16

*Harvey v. Bank of America, N.A.*
   906 F.Supp.2d 982 (N.D. Cal. 2012) ................................................10

*Herskowitz v. Apple, Inc.*
   301 F.R.D. 460 (N.D. Cal. Aug. 7, 2014) .........................................18

*Image Technical Servs., Inc. v. Eastman Kodak Co.*
   125 F.3d 1195 (9th Cir. 1997)............................................................23

*In re Iphone App. Litigation*
   844 F.Supp.2d 1040 (N.D. Cal. 2012) ..............................................25

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*
    466 U.S. 2 (1984) ...................................................................................22

*Katzman v. Allstate Ins. Co.*
    2010 WL 11515454 (C.D. Cal. 2010) ..................................................18

*Kelley v. Mort. Elec. Reg. Sys.*
    642 F.Supp.2d 1048 (N.D. Cal. 2009) .................................................10

*Kendall v. VISA, U.S.A., Inc.*
    518 F.3d 1042 (9th Cir. 2008).............................................................21

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005).............................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal.4th 1134 (2003).......................................................................17

*Ladore v. Sony Computer Entm't Am., LLC*
    75 F.Supp.3d 1065 (N.D. Cal. 2014) ..................................................25

*Malcom v. Farmers New World*
    4 Cal.App.4th 296 (1992)....................................................................15

*Marder v. Lopez*
    450 F.3d 445 (9th Cir. 2006)...............................................................11

*McGlinchy v. Shell Chem. Co.*
    845 F.2d 802 (9th Cir. 1988)...............................................................22

*Menasha Corp. v. News Am. Mktg. In-Store*
    354 F.3d 661 (7th Cir. 2004)...............................................................21

*MetroNet Servs. Corp. v. Qwest Corp.*
    383 F.3d 1124 (9th Cir. 2004)..............................................................23

*Moradi-Shalal v. Fireman's Fund Ins. Co.*
    46 Cal.3d 287 (1988)...........................................................................19

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001).................................................................8

*Nelson v. Am. Family Mut. Ins. Co.*
    899 F.3d 475 (8th Cir. 2018)..........................................................12, 13

*Newcal Indus. v. Ikon Office Solution*
    513 F.3d 1038 (9th Cir. 2008)..............................................................21

*O'Keefe v. Allstate Indem. Co.*
    953 F.Supp.2d 1111 (S.D. Cal. 2013) ...................................................9

SMRH:489048737.9

*Or. Laborers-Employers Health & Welfare Fund v. Phillip Morris Inc.*
    185 F.3d 957 (9th Cir. 1999) ................................................................................................20

*Prime Healthcare Servs. v. SEIU*
    2013 WL 3873074 (S.D. Cal. 2013) .....................................................................................23

*R&B Auto Center, Inc. v. Farmers Group Inc.*
    140 Cal.App.4th 327 (2006) ..................................................................................................9

*Rattan v. United Servs. Auto Ass'n*
    84 Cal.App.4th 715 (2001) ...................................................................................................19

*Rebel Oil Co. v. Atl. Richfield Co.*
    51 F.3d 1421 (9th Cir. 1995) ................................................................................................23

*Resnick v. Hyundai Motor Am. Inc.*
    2016 WL 9455016 (C.D. Cal. 2016) .....................................................................................10

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*
    2013 WL 5694452 (N.D. Cal. 2013) .....................................................................................24

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*
    532 F.3d 963 (9th Cir. 2008) ................................................................................................23

*Roberts v. Assurance Co. of America*
    163 Cal.App.4th 1398 (2008) ...............................................................................................15

*Rojas-Lozano v. Google, Inc.*
    159 F.Supp.3d 1101 (N.D. Cal. 2016) ..................................................................................25

*Sausalito Pharmacy, Inc. v. Blue Shield*
    544 F.Supp. 230 (N.D. Cal 1980) ........................................................................................20

*In re Silicon Graphics, Inc. Sec. Lit.*
    970 F.Supp. 746 (N.D. Cal. 1997) .......................................................................................10

*Silicon Knights v. Crystal Dynamics*
    983 F.Supp. 1303 (N.D. Cal. 1997) .....................................................................................17

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ................................................................................................11

*Stearns v. Select Comfort Retail Corp.*
    2009 WL 1635931 (N.D. Cal. 2009) .....................................................................................19

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) (per curiam) ...........................................................................10

*Tanaka v. Univ. of So. Cal.*
    252 F.3d 1059 (9th Cir. 2001) ..............................................................................................21

*Vess v. Ciba-Geigy Corp., USA*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................10

*Von Grabe v. Sprint PCS*
    312 F.Supp.2d 1285 (S.D. Cal. 2003) ............................................................19

*Wallman v. Suddock*
    200 Cal.App.4th 1288 (2011) .........................................................................15

*Whittlestone Inc. v. Handicraft Co.*
    618 F.3d 970 (9th Cir. 2010) ..........................................................................18

*Williams v. Smith*
    820 N.W.2d 807 (Minn. 2012) ........................................................................13

*World Health & Educ. Found. v. Carolina Cas. Ins. Co.*
    612 F.Supp.2d 1089 (N.D. Cal. 2009) ...........................................................14

Statutes

Cal. Bus & Prof. Code § 16727 ...........................................................................23, 24

Cal. Bus. & Prof. Code § 17200 ..............................................................................16

Cal. Bus & Prof. Code § 17203 ...............................................................................17

Cal. Code Regs. § 2695.183 .....................................................................................17

Cal. Code Regs. § 2695.183 (m)-(p) ........................................................................17

Cal. Ins. Code §§ 10101, 10102 ...........................................................................3, 14

Cal. Ins. Code § 790.03 .........................................................................................5, 19

Other Authorities

Fed. R. Civ. Proc. 8 ...................................................................................................9

Fed. R. Civ. Proc. 9(b) .......................................................................................10, 17

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................8, 9, 18

SMRH:489048737.9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND STATEMENT OF ISSUES

This suit, styled as a class action, claims that Plaintiffs' homeowners insurer caused them to be underinsured for fire loss. Plaintiffs are all State Farm insureds whose Northern California homes were destroyed by wildfire in 2017. They allege that their policy limits were insufficient to completely rebuild their homes. They now blame their failure to purchase higher limits on State Farm and one of its vendors, Verisk Analytics, Inc. ("Verisk"), which licenses replacement cost estimating tools for underwriting purposes (360Value®) and for claims purposes following a loss (Xactimate®).

Putting aside whether any of Plaintiffs' claims may properly be certified for class treatment (they cannot), the central premise of their suit fails. California law governing this diversity action is clear that homeowners, *not* insurers, are responsible for ensuring that their policy limits are adequate, because homeowners know their property and their circumstances best. The California Residential Property Insurance Disclosure mandated by Insurance Code sections 10101 and 10102 encourages homeowners to review their policy limits carefully, obtain current replacement cost estimates, and advise insurers of any property improvements. It also tells homeowners to consider insuring their property for more than its estimated replacement cost to account for "demand surge," the dramatic increase in construction and labor costs that commonly occurs after a widespread disaster, like the 2017 Northern California wildfires.

Plaintiffs do not allege that they did any of these things. They simply, and vaguely, allege that, at some unspecified time, they received replacement cost estimates ("Estimates"), either prepared by 360Value or some other source, that differ from their contractors' post-disaster rebuild estimates. Plaintiffs then jump to the conclusion that their initial Estimates were unreasonably low, and that State Farm bears liability for the difference between their current policy limits and their rebuild costs. But that is not the law, and none of the thirteen legal theories Plaintiffs assert in their Second Amended Complaint states a valid claim.

Plaintiffs' bad faith claim (Count 1) fails because that theory requires an unreasonable denial of benefits owed under an insurance contract.  Plaintiffs do not allege that State Farm refused to pay a benefit owed under their policies.  Instead, they complain that State Farm refused to pay *more* than their policy limits provide.

Plaintiffs' misrepresentation and reformation claims (Counts 2 to 4 and 6) fail because they do not allege actual and reasonable reliance on any false or misleading statement.  Plaintiffs complain that State Farm's website and unspecified conduct of its agents misled them, but all State Farm's website allegedly states is that its agents can utilize 360Value to assist customers with a replacement cost estimate.  Plaintiffs do not explain how that statement is false, nor do they allege that they reviewed and relied on State Farm's website before purchasing their policies.

Plaintiffs also complain that the Estimates they received misled them as to the cost to rebuild their homes.  They admit that 360Value can produce reliable Estimates, and they allege no facts supporting that their Estimates were unreliable when made.  Simply relying on their post-loss rebuild estimates does not suffice, as construction costs change over time and often spike following a widespread disaster.  Moreover, only the Sheahans specifically allege they received a 360Value Estimate, and none of the Plaintiffs' current policy limits match their alleged Estimates.

Even if Plaintiffs could show falsity and actual reliance, which they cannot, they could never demonstrate reasonable reliance on an Estimate as a rebuild cost guarantee.  By definition, a 360Value Estimate is just that – an estimate, *not* a guarantee.  In fact, Plaintiffs concede that their policies expressly provide that "State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home" following a loss.  Plaintiffs' policies also include an integration clause that bars any misrepresentation claim based on purported promises or agreements not memorialized in the policies.

Plaintiffs' negligence claim (Count 5) fails because insurers generally have no duty to set adequate policy limits or advise insureds regarding the adequacy of the same.  Plaintiffs allege no facts supporting an exception to that well-established rule.  Simply receiving an Estimate from their insurance agent does not suffice as a matter of law.

1    Plaintiffs' seventh claim for violation of California's Unfair Competition Law, Cal. Bus. &

2    Prof. Code §§ 17200 *et seq.* (the "UCL") also fails, because they do not allege a predicate

3    fraudulent, unfair or unlawful act.  Plaintiffs argue that their Estimates were "unlawful" because

4    the Estimates did not comply with an insurance regulation that became effective in 2011, but do

5    not allege receipt of any non-compliant Estimate after that regulation went into effect.  They also

6    seek impermissible monetary relief under the UCL, because they essentially seek damages under

7    the guise of an injunction mandating that State Farm pay them their contractors' full rebuild costs

8    regardless of policy limits.

9    Plaintiffs' ninth claim for violation of the Unfair Insurance Practices Act, Cal. Ins. Code §

10   790.03, fails because there is no private right of action for violation of that statute.

11   Plaintiffs' state and federal antitrust claims (Counts 8 and 10-12) fail because they do not

12   allege facts supporting an antitrust injury, a conspiracy violating Section 1 of the Sherman Act, or

13   a monopoly barred by Section 2 of the Sherman Act.  Their state Cartwright Act claim, which

14   largely mirrors their Sherman Act claim, fails for similar reasons and because the two specific

15   statutory sections cited in connection with that claim have nothing to do with the subject matter of

16   Plaintiffs' Second Amended Complaint.

17    Finally, Plaintiffs' claim for violation of "California's Products Liability Act" (Count 13)

18   fails because there is no such act.  Moreover, California courts reject that insurance or software are

19   subject to products liability claims generally.

20   As this is now Plaintiffs' third attempt at stating a valid claim, State Farm requests that the

21   Court dismiss Plaintiffs' Second Amended Complaint *without* leave to amend.

22                                                   **II.**

23                        **ALLEGATIONS OF PLAINTIFFS' COMPLAINTS**

24   Plaintiffs allege that their homes were destroyed in wildfires in Northern California in

25   2017, and that their State Farm homeowners policy limits were insufficient to rebuild.

26   Recognizing that California law does not generally impose a duty on homeowners insurers to set

27   adequate policy limits, Plaintiffs vaguely allege that State Farm undertook a special duty "through

28

1   the behavior of its sales agents and the plain language on its website." (Second Amended

2   Complaint, ECF 28 ("SAC"), ¶ 58). They allege that State Farm's website states that:

> The most appropriate way to estimate the replacement cost of your
> home is to hire a building contractor or other building professional
> to produce a detailed replacement cost estimate. Or your State Farm
> agent can utilize an estimating tool from Xactware Solutions to
> assist you with an estimate. (SAC, ¶ 55).

6   That estimating tool is 360Value, one of two Verisk software products used by State Farm.

7   (SAC, ¶ 45). Plaintiffs contend that the 360Value tool "provides a calculated value based on the

8   summation of number of stories, square footage, use, year built, quality grade, foundation shape,

9   foundation type, roof shape, exterior wall finish, exterior wall construction, floor coverings,

10  interior wall finish, bathrooms, bedrooms, deck square footage and material, air conditioning,

11  specialty systems, number and type of fireplaces, lighting, interior doors and millwork, other

12  interior features, material and labor costs, permits, fees, overhead, profit, … sales tax … [and] zip

13  code." (SAC, ¶ 59). Plaintiffs concede that, "[a]fter a detailed inventory and input … 360Value

14  can deliver an accurate result." (SAC, ¶ 49). But, they claim, either "intentionally or by

15  negligence, most State Farm agents do not use 360Value in the correct manner to achieve an

16  accurate result." (SAC, ¶ 49). Plaintiffs allege that their agents in particular did not use 360Value

17  properly, because "they were never specifically interviewed about the qualities of their dwelling

18  such as might be appropriate to create a reasonable estimate of value for underwriting." (SAC, ¶

19  84).

20  Despite not providing their agent with information they believed was necessary to create a

21  reliable estimate, Plaintiffs contend that State Farm "sets an expectation and understanding that

22  Plaintiffs can rely upon the 360Value to be a correct and accurate policy limits value." (SAC, ¶

23  58). Plaintiffs allege that State Farm does this by "setting policy limits based upon the exact cost

24  in the 360Value document." (SAC, ¶ 58). Yet, Plaintiffs also inconsistently allege that policy

25  limits are "often" more than the 360Value result. (SAC, ¶ 49). Indeed, none of their policy limits

26  matched their alleged Estimates. (SAC, ¶ 53).

27

28

Importantly, Plaintiffs **admit** that they received several written disclaimers regarding the 360Value tool and Estimates generally.  They allege that a 360Value Estimate received by the Sheahans includes the following language:

> This Xactware estimate provides an estimated replacement cost based on the information you provided about the age, style, size, and features of the building.  The more information you provide, the more the estimate will reflect the individual characteristics of the building. … This is a general estimate provided for State Farm® customers and should not be considered to be a professional replacement cost survey of the building.  (SAC, ¶ 58, p. 13).

They also allege that their State Farm policies included the following language:

> The limit of liability for this structure (coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.  ***It is up to you to choose the coverages and limits that meet your needs.***  We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home.  Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from a third-party vendor using information you provide about your home.  We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home.  ***State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home.***  Higher limits are available at higher premiums.  Lower limits are also available, which if selected may make certain coverages unavailable to you.  ***We encourage you to periodically review your coverage and limits with your agent and to notify us of any changes or additions to your home***.  (SAC, ¶ 62) (emphasis added).

Consistent with that disclosure, Plaintiffs concede that "State Farm does not offer a guarantee as to the actual cost to rebuild a policyholder's home."  (SAC, ¶ 63).

While all Plaintiffs allege receiving the above disclosures, not one alleges facts supporting that they saw or relied upon State Farm's website, or any specific conduct or statement by a State Farm agent, in purchasing their policies or setting their dwelling limits.

With the exception of the Sheahans, Plaintiffs also do not clearly allege that they received a 360Value Estimate.  For example, in the initial Complaint, Mr. Pope claimed that his 360Value Estimate was for "…" and later alleged simply that "his policy was undervalued, with the zip code calculator."  (Complaint, ECF 1, ¶¶ 49, 81).  The Wylies initially alleged a 360Value Estimate of "$632k (mod)" but later claimed that their policy limit was $513,600, more than $100,000 less.

1  (Complaint, ¶¶ 49, 82).  Plaintiffs' First Amended Complaint, filed on December 7, 2018, claimed

2  that each Plaintiff received a "360/Initial Value" estimate, but did not explain what an "Initial

3  Value" estimate was, who prepared "Initial Value" estimates, or how an "Initial Value" estimate

4  differed from a 360Value® estimate.  (First Amended Complaint, ECF 12 ("FAC"), ¶ 53).

5  In addition, none of the "360/Initial Value" estimate amounts matched the alleged policy

6  limits.  Mr. Pope alleged a "360/Initial Value" estimate of $170,000 and a "Coverage A Date of

7  Loss" limit of $330,851.  (FAC, ¶ 53).  The Sheahans alleged a "360/Initial Value" estimate of

8  $509,000 "in 2001," a 360Value Estimate of $524,000 in 2009, and a "Coverage A Date of Loss"

9  limit of $768,700.  (FAC, ¶¶ 53, 82).  The Wylies alleged a "360/Initial Value" estimate of

10  $227,400 and a "Coverage A Date of Loss" limit of $513,900.  (FAC, ¶ 53).

11  The Wylies also changed their rebuild cost allegations in the Amended Complaints.  They

12  had initially alleged a rebuild cost of $814,000 in their Complaint, but now allege a rebuild cost of

13  $1.22 million—more than 30% higher.  (Complaint, ¶ 49; FAC & SAC, ¶ 53).

14  On January 6, 2019, Plaintiffs filed a Second Amended Complaint changing, among other

15  things, the Sheahans' rebuild cost allegations.  In contrast to their original alleged rebuild cost of

16  $2.017 million, the Sheahans now allege a rebuild cost of $2.178 million, an increase of more than

17  $160,000.  (Complaint, ¶ 49; SAC, ¶ 53).

18  Based on these fluid allegations, Plaintiffs assert thirteen separate putative class claims

19  against State Farm, and eleven against Verisk, on behalf of themselves and all "homeowners who

20  have purchased homes and insured with State Farm, sustained damage or loss during the Northern

21  California Wildfires, and their property has been undervalued by State Farm's business practices."

22  (SAC, ¶ 29).  All of those claims fail.

### III.

### PLAINTIFFS MUST ALLEGE *FACTS*, NOT LEGAL CONCLUSIONS, TO SURVIVE A MOTION TO DISMISS

26  A Rule 12(b)(6) motion "tests the legal sufficiency of the claim."  *Navarro v. Block*, 250

27  F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or

28

1   the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

2   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

3         Rule 8 of the Federal Rules of Civil Procedure requires, at a minimum, enough specific

4   factual allegations to provide both "fair notice" of the particular claim being asserted and the

5   "grounds" upon which that claim rests. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  "A

6   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

7   labels and conclusions …." *Id.*   To avoid dismissal under Rule 12(b)(6), a plaintiff must allege

8   "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,

9   556 U.S. 662, 678 (2009).  Rather, a complaint must "contain sufficient factual matter, accepted as

10  true, to 'state a claim for relief that is plausible on its face.'"  *Id.*  "[A] formulaic recitation of the

11  elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

**IV.**

12

13  **PLAINTIFFS' CONCLUSORY ALLEGATIONS FAIL TO STATE A VALID CLAIM**

14  **A.**      **Plaintiffs Fail to State a Bad Faith Claim (Count 1)**

15        The duty of good faith does not extend "beyond the terms of the insurance contract in

16  force." *Gibson v. Gov't Employees Ins. Co.*, 162 Cal.App.3d 441, 448 (1984).  Consequently, to

17  state a breach of the implied covenant claim, an insured must allege an unreasonable withholding of

18  benefits under the policy *as written*.  *O'Keefe v. Allstate Indem. Co.*, 953 F.Supp.2d 1111, 1115

19  (S.D. Cal. 2013) (and authority cited therein); *Gasnik v. State Farm Ins. Co.*, 825 F.Supp. 245, 251

20  (E.D. Cal. 1992) (dismissing bad faith claim based on inadequate underinsured motorist limits

21  where State Farm offered limits under the contract as written); *R&B Auto Center, Inc. v. Farmers*

22  *Group Inc.*, 140 Cal.App.4th 327, 353-354 (2006) (affirming dismissal of bad faith claim where

23  contract did not provide coverage, despite the insured's claim for reformation, reasoning that

24  "[s]ince it is reasonable to deny the claim at the time, if the policy is later reformed to provide

25  retroactive coverage, the insurer may not be held liable for bad faith for failing to have the foresight

26  to know that the policy would be reformed").

27        Here, Plaintiffs do not allege that State Farm unreasonably withheld any benefits owed

28  under their policies as written.  They complain that State Farm breached the implied covenant of

good faith and fair dealing by "fail[ing] to provide policy limits coverage sufficient to cover the rebuild cost of Plaintiffs' homes." (SAC, ¶ 99).  Because Plaintiffs base their bad faith claim on State Farm's alleged refusal to pay **more than** the limits their policies provide, that claim fails.

**B.**     **Plaintiffs Do Not Allege Facts Supporting their Misrepresentation and Reformation Claims (Counts 2-4, 6)**

Plaintiffs' claims for fraud and reformation based on alleged misrepresentations are subject to Rule 9(b)'s heightened pleading standard and must be plead with particularity.  Fed. R. Civ. Proc. 9(b); *Harvey v. Bank of America, N.A.*, 906 F.Supp.2d 982, 992 (N.D. Cal. 2012) (reformation is a remedy, not a cause of action in federal court, and must be pled with particularity under Rule 9(b)).  That requires, at a minimum, that Plaintiffs allege the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal citation omitted); *see also Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106-08 (9th Cir. 2003).  Plaintiffs "must set forth what is false or misleading about the statement, and why it is false."  *In re Glenfed, Inc. Sec. Lit.,* 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds as stated in *In re Silicon Graphics, Inc. Sec. Lit.*, 970 F.Supp. 746, 754 (N.D. Cal. 1997).  Plaintiffs must also allege facts supporting that they actually and reasonably relied on the false statements.  *Kelley v. Mort. Elec. Reg. Sys.*, 642 F.Supp.2d 1048, 1056 (N.D. Cal. 2009).

*No misrepresentation*.  Plaintiffs identify the following specific statement on State Farm's website in support of their misrepresentation claims:

> The most appropriate way to estimate the replacement cost of your home is to hire a building contractor or other building professional to produce a detailed replacement cost estimate.  Or your State Farm agent can utilize an estimating tool from Xactware Solutions to assist you with an estimate.  (SAC, ¶¶ 55-56, 104).

Notably, not one Plaintiff alleges that they actually saw this statement before purchasing their policy.  That omission alone is fatal.  *See, e.g., Resnick v. Hyundai Motor Am. Inc.*, 2016 WL 9455016, *15 (C.D. Cal. 2016) (plaintiffs failed to plead actual reliance where they failed to allege facts supporting that they saw the alleged misrepresentations on the defendant's website) (citing *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010) (same)).

1    Even if Plaintiffs had alleged that they visited State Farm's website, they do not contend

2    that this website statement alone was false or misleading.  Instead, Plaintiffs allege that State

3    Farm's website, combined with "the behavior of its sales agents," falsely represented to them that

4    the 360Value tool is as reliable as a contractor estimate.  (SAC, ¶ 58).  But Plaintiffs do not

5    specify any purported behavior of State Farm agents.  They also admit that the 360Value tool *can*

6    produce reliable replacement cost estimates.  (SAC, ¶ 49).

7        ___*No actual reliance*___.  Plaintiffs also do not allege facts supporting that they received a false

8    or misleading 360Value Estimate that they relied upon to their detriment.  Other than the

9    Sheahans, Plaintiffs fail to clearly allege that they even received a 360Value Estimate.  They

10   allege only "360/Initial Value" amounts, without clarifying what an "Initial Value" estimate is,

11   what facts they provided to State Farm to support the estimate, or when they received it.  (SAC, ¶

12   53).

13       The Sheahans' 360Value Estimate, in contrast, describes a materially different home than

14   the one in their contractor's rebuild estimate.  Their October 2009 360Value Estimate was based

15   on a 3,600 square foot split level home built in 1986 with three bathrooms.  (SAC, ¶ 58, p. 13).

16   Their contractor's rebuild estimate, dated December 2018, is for a 4,233 square foot home with

17   five bathrooms, a 1,100 square foot garage, and more than $100,000 in landscaping.  (SAC, ¶ 54;

18   *see* Ex. 2[1]).  It also includes a $12,500 jacuzzi, a $13,000 refrigerator, a $30,000 custom patio

19   door, and a $2,800 shower door, among other luxury features not documented in the 360Value

20   estimate they received.  (Ex. 2).  Thus, the Sheahans could not have relied on a 360Value Estimate

21   that described a significantly smaller and less expensive home than the one they propose to

22   rebuild, as described in their contractor's estimate.

23       Plaintiffs' allegations also negate that they actually relied upon a 360Value or "Initial

24   Value" estimate in setting their policy limits.  Mr. Pope alleges policy limits on the date of loss of

25

26   ___
     [1] Attached as Exhibit 2 to this Motion is the proposed Rebuild Estimate by the Sheahans'
     contractor, which the Court may properly consider under the incorporation by reference doctrine.

27   *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Marder v. Lopez*, 450 F.3d 445, 448
     (9th Cir. 2006).  In addition, the Court may disregard allegations that are contradicted by the

28   incorporated document.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1   $330,851, nearly twice the amount of his "360/Initial Value" estimate.  (SAC, ¶ 53).  The Wylies

2   allege policy limits of $513,900, more than double their alleged "360/Initial Value" estimate of

3   $227,400.  (SAC, ¶ 53).  The Sheahans allege policy limits of $768,700, about 50% more than

4   their 360Value Estimate.  (SAC, ¶ 53).

5          ***No reasonable reliance***.  In addition to lacking facts supporting falsity and actual reliance,

6   Plaintiffs do not and cannot allege that they **reasonably** relied on any Estimate as a replacement

7   cost guarantee.  California law recognizes that a replacement cost estimate is just that – an

8   ***estimate*** – and cannot support claims against an insurer for bad faith, misrepresentation or policy

9   reformation.  *Everett v. State Farm Gen. Ins. Co.*, 162 Cal.App.4th 649, 653, 661 (2008).

10          Like this case, *Everett* involved a home destroyed by fire, and a homeowner who alleged

11   that her State Farm policy limits were too low to fully rebuild.  Like Plaintiffs here, Everett

12   alleged numerous theories against State Farm seeking to hold it liable for the difference.  The trial

13   court found that all of her theories failed as a matter of law, and the Court of Appeal affirmed.  In

14   particular, the court agreed with State Farm that "it never represented to her that her home was

15   covered for up to 100 percent of the amount to replace her property."  *Everett*, 162 Cal.App.4th at

16   654.  To the contrary, State Farm repeatedly reminded Everett that it was her duty to ensure that

17   her stated policy limits were adequate:

18                  Each year that Everett had her insurance with State Farm, State
                    Farm sent renewal certificates.  These certificates reminded Everett
19                  that the replacement cost figure identified by State Farm was merely
                    an estimate, and that it was her responsibility to determine whether
20                  her property was adequately insured.  Thus, contrary to Everett's
                    contention that it was State Farm's duty to maintain policy limits
21                  equal to replacement cost, Everett bore such duty.

22   *Id.* at 661.  As a result, the court held that there was "no misrepresentation, negligent or

23   intentional" that could support Everett's claims.  *Id.* at 664; *see also*, *Graham v. Bank of*

24   *American, N.A.*, 226 Cal.App.4th 594, 606 (2014) (statements regarding the estimated appraised

25   value of property are not actionable misrepresentations).

26          The Eighth Circuit Court of Appeal came to the same conclusion just last year in *Nelson v.*

27   *Am. Family Mut. Ins. Co.*, 899 F.3d 475, 481 (8th Cir. 2018).  In *Nelson*, the plaintiffs'

28   homeowners insurer, American Family, relied on 360Value to estimate the replacement cost of

1   plaintiffs' home.  *Id.* at 478.  According to plaintiffs, the designated "quality grade" for their home

2   led to a replacement cost that was too high.  *Id.* at 478-479.  They sued American Family for

3   breach of contract, negligent misrepresentation and consumer fraud claims, all "based on the

4   notion that the company misrepresented the replacement cost of the property, which caused [the

5   insureds] to pay excessive premiums."  *Id.* at 477.

6          Applying Minnesota law, which requires the same justifiable reliance element for fraud-

7   based claims as California law (*compare Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012)

8   with *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986)), the Eighth Circuit rejected plaintiffs'

9   claims.  Like State Farm's policy here, American Family's Gold Star Homeowners Insurance

10  Policy expressly disclaimed any replacement cost guarantee, as follows:

> The actual cost to replace your dwelling may be different.  We do
> not guarantee that this figure will represent the actual cost to replace
> your dwelling.  You are responsible for selecting the appropriate
> amount of coverage.  You may wish to obtain a detailed replacement
> cost appraisal or estimate from a contractor.

14  *Nelson*, 899 F.3d at 478.  Thus, American Family "[did] not guarantee its replacement cost

15  estimate will be the actual replacement in the event of a covered loss;" instead, it was "up to the

16  policyholder to select the proper amount of coverage."  *Id.* at 481.  "Under these circumstances,"

17  the Eighth Circuit concluded, "the [insureds] cannot show justifiable reliance upon American

18  Family's replacement cost estimates."  *Id.* at 481.[2]

19          ***Policy disclaimers***.  Similarly here, Plaintiffs admit that State Farm disclosed that their

20  replacement cost estimate was merely an estimate, that it does ***not*** guarantee that any replacement

21  cost estimate will be the actual cost to rebuild their home after a loss, and that it was Plaintiffs'

22  responsibility to ensure that their policy limits were adequate.  (SAC, ¶¶ 62-63).  Those

23  disclosures are consistent with California law, which mandates a California Residential Property

24

25  _____

26  [2] The *Nelson* Court also rejected the breach of contract claim because "[n]othing in the Policy
    imposes on American Family a contractual obligation to make objectively reasonable or accurate
    replacement cost estimates."  *Id.* at 480.  Additionally, the consumer fraud claim failed because

27  "[a]ny claim that the replacement costs estimate was a false statement is contrary to the express
    provision of the Policy that clearly states that the estimate may or may not be correct and that the

28  insured should independently verify the proper amount of coverage."  *Id.* at 482.

Insurance Disclosure (the "Disclosure") with all residential property insurance policies.  Cal. Ins. Code §§ 10101-10102.  The Disclosure advises insureds, among other things:

> **READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:**  The policy declarations page shows the specific coverage limits you have purchased for your dwelling …. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. …
>
> **THE RESIDENTIAL DWELLING COVERAGE LIMIT:**  The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is <u>completely</u> destroyed. … You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. … While not a guarantee, a current estimate can help protect you against being underinsured.
>
> **DEMAND SURGE:**  After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor.  This effect is known as demand surge.  Demand surge can increase the cost of rebuilding your home.  Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

Cal. Ins. Code § 10102.[3]

**_Integration clause_**.  The Sheahans' policy also includes an integration clause.  (SAC, ¶ 75; Ex. 1, p. 31) ("You agree, by acceptance of this policy, that: … 4.  this policy contains all of the agreements between you and us and any of our agents.").  California courts enforce that clause to bar fraud, misrepresentation and estoppel claims based on alleged representations not included in the written policy.  *Everett*, 162 Cal.App.4th at 664 ("no alleged oral representation could have been effective to change the terms of the fully integrated policy"); *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) (dismissing without leave to amend fraud, misrepresentation and promissory estoppel claims alleging promise of broader coverage than provided under fully integrated policy); *see also Hadland v. NN Investors Life Ins. Co.*, 24 Cal.App.4th 1578 (1994) ("A court must hold the insured bound by clear and conspicuous

---

[3] The Sheahans' policy, which Plaintiffs reference in their complaint but do not attach (SAC, ¶ 75), includes the Disclosure.  State Farm attaches that policy to this Motion as Exhibit 1, which the Court may also consider under the incorporation by reference doctrine.  (*See* Ex. 1, pp. 6-7).

1    provisions in the policy, even if evidence suggests that the insured did not read or understand

2    them.").  Similarly here, Plaintiffs cannot allege a misrepresentation claim that contradicts the

3    express language of their policies.

4           In sum, Plaintiffs have not alleged facts supporting that they actually or reasonably relied

5    on any false or misleading statement by State Farm to their detriment.  They have had ample

6    opportunity to plead with the required specificity.  They cannot do so.  Indeed, their allegations

7    negate a valid claim.  Plaintiffs' fraud-based claims should be dismissed with prejudice.

8    **C.**     **Plaintiffs' Negligence Claim Fails (Count 5)**

9           California courts consistently hold that an insurer "is permitted to set policy limits on a

10   homeowners fire policy," but that "'[i]t is up to the insured to determine whether he or she has

11   sufficient coverage for his or her needs.'"  *Adamo v. Fire Ins. Exch*., 219 Cal.App.4th 1286, 1295

12   (2013) (quoting *Everett*, 162 Cal.App.4th at 649).  In other words, California law squarely "places

13   the burden of determining the higher limit of liability needed on the insured."  *Everett*, 162

14   Cal.App.4th at 660-661 (citing Cal. Ins. Code §§ 10101, 10102).  Thus, an insurer generally has

15   no duty to make a particular kind or extent of coverage available, advise an insured of the

16   availability of such coverage elsewhere in the industry, or "advise them of inadequacies in

17   coverage of which [insureds] as reasonable persons, have themselves been aware."  *Gibson*, 162

18   Cal.App.3d at 452; *Malcom v. Farmers New World*,  4 Cal.App.4th 296, 303-304 (1992).

19          Likewise, an insurance agent "generally has no duty to volunteer that an insured should

20   obtain different or additional insurance coverage."  *Roberts v. Assurance Co. of America*, 163

21   Cal.App.4th 1398, 1403-04 (2008).  That rule changes "when—but only when—one of the

22   following three things happens: (a) the agent misrepresents the nature, extent or scope of the

23   coverage being offered or provided …, (b) there is a request or inquiry by the insured for a

24   particular type or extent of coverage …, or (c) the agent assumes an additional duty by either

25   express agreement or by 'holding himself out' as having expertise in a given field of insurance

26   being sought by the insured …."  *Id.* at 1404.  Simply having a longtime relationship with an

27   agent, an agent having superior knowledge regarding coverages, or an agent reviewing an

28   insured's policy does not suffice. *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916, 929 (1997); *Wallman*

*v. Suddock*, 200 Cal.App.4th 1288, 1312 (2011) (allegation that purchased insurance from agent for years and followed agent's advice on insurance matters not sufficient to support heightened duty as "insurance expert").  Whether a heightened duty sufficient to support a negligence claim exists is a question of law.  *Fitzpatrick v. Hayes*, 57 Cal.App.4th at 920.

Plaintiffs allege that State Farm undertook "a special duty … to accurately set each of Plaintiffs' policy limits to fully compensate them for the cost of replacing or rebuilding their homes" based on its "affirmations that Verisk's software was equal to a contractor's estimate and would accurately calculate policy limits for rebuilding each of Plaintiffs' homes."  (SAC, ¶ 150). But, all State Farm's website allegedly said was that its agents could assist with providing an estimate prepared by 360Value.  That falls far short of "holding out" that State Farm agents have some special estimating expertise.  *See, e.g.*, *Fitzpatrick*, 57 Cal.App.4th at 929 (State Farm's "Family Insurance Checkup" campaign which encouraged insureds to ask their agents about additional insurance needs insufficient to support heightened duty as a matter of law).

Moreover, no Plaintiff alleges that they saw the website before purchasing their policies, and only one group of Plaintiffs (the Sheahans) specifically allege receiving a 360Value estimate. *Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 220 F.Supp.3d 1008, 1018 (N.D. Cal. 2016) (website statements from 2013 not sufficient to create an elevated duty of care of insurance agents to insured in 2008 when policy purchased).  In addition, Plaintiffs concede that State Farm does not guarantee that any Estimate would accurately reflect the cost to rebuild or replace their property following a loss.  (SAC, ¶ 63).  Thus, as a matter of law, no heightened duty exists under the facts alleged.

**D.    Plaintiffs' UCL Claim Fails (Count 7)**

**1.    Plaintiffs Do Not Adequately Allege a UCL Claim**

The UCL prohibits "unfair competition" defined to include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

Claims alleged under the UCL's fraudulent prong are subject to Rule 9's heightened pleading requirement.  *Davidson v. Kimberly Clark Corp*., 76 F.Supp.3d 964, 974 (N.D. Cal. 2014) (dismissing without leave to amend UCL, FAL and other claims where, among other things,

1   the plaintiff failed to allege those fraud-based claims with particularity under Rule 9(b)).  As

2   discussed above, Plaintiffs have failed to allege fraud with specificity.  Consequently, they have

3   not alleged facts supporting a "fraudulent" practice under the UCL.  *Id.*

4          Nor have they alleged an "unfair" practice, which they similarly base on a fraud theory and

5   must plead with particularity.  (SAC, ¶ 174); *Silicon Knights v. Crystal Dynamics*, 983 F.Supp.

6   1303, 1316 (N.D. Cal. 1997) ("A plaintiff alleging unfair business practices under the unfair

7   competition statutes 'must state with reasonable particularity the facts supporting the statutory

8   elements of the violation.'") (citation omitted).

9          The closest Plaintiffs come is their separate allegation that State Farm's conduct is

10  "unlawful" in that it violates 10 Cal. Code Regs. § 2695.183.  That regulation mandates that, if an

11  insurer provides a replacement cost estimate to an insured, the estimate must consider certain

12  specified items.  10 Cal. Code Regs. § 2695.183(a).  It specifies, however, that it (1) does not

13  require an insurer "to estimate replacement cost or to set or recommend a policy limit to an

14  applicant or insured," (2) should not be construed as "requiring a licensee to advise the applicant

15  or insured as to the sufficiency of an estimate of replacement cost," and (3) does not "limit or

16  preclude an insurer from agreeing to provide coverage for a policy limit that is greater than or less

17  than an estimate of replacement cost provided pursuant to this article."  10 Cal. Code Regs. §

18  2695.183 (m)-(p).  Importantly, the regulation did not go into effect until June 27, 2011.

19  *Association of Cal. Ins. Cos. v. Jones*, 2 Cal.5th 376, 384 (2017).

20         Here, no Plaintiff alleges that State Farm communicated a non-compliant estimate after the

21  regulation went into effect.  Only the Sheahans allege the date that they received a 360Value

22  estimate, and that date (December 2009) fell about a year and a half before the regulation became

23  effective.  (SAC, ¶ 58, p. 13).  Thus, they fail to allege a predicate "unlawful" act under the UCL.

24         **2.      Plaintiffs Seek Impermissible Relief Under their UCL Claim**

25         Plaintiffs' UCL claim also fails because it seeks impermissible monetary and injunctive

26  relief.  The UCL does not permit an award of damages.  Cal. Bus & Prof. Code § 17203; *Korea*

27  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148-1149 (2003).  Yet, that is effectively

28  what Plaintiffs seek by their request for an injunction requiring State Farm to "adjust their claims

1    without respect to policy limits set forth in their homeowners insurance policies."  (SAC, ¶ 178);

2    *Katzman v. Allstate Ins. Co.,* 2010 WL 11515454, *2 (C.D. Cal. 2010) (request for an injunction

3    requiring homeowners insurer to pay full replacement cost of property destroyed in fire not

4    permissible relief under the UCL); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 482 (N.D. Cal. Aug.

5    7, 2014) ("[A] plaintiff cannot transform a claim for damages into an equitable action by asking

6    for an injunction that orders the payment of money.").  Thus, to the extent Plaintiffs allege a viable

7    UCL claim against State Farm (which they do not), their request for an injunction requiring State

8    Farm to pay the full replacement cost of their property, without regard to policy limits, must be

9    dismissed or stricken.  *See Whittlestone Inc. v. Handicraft Co.,* 618 F.3d 970, 974 (9th Cir. 2010)

10   (Rule 12(b)(6) supports dismissal of impermissible damages claims).

11       Plaintiffs also request an injunction requiring State Farm to effectively issue guaranteed

12   replacement cost policies and promise that all insureds have adequate insurance for their needs.

13   (SAC, p. 44, Prayer ¶ 8(c)).  California law does not require homeowners insurers to issue

14   guaranteed replacement cost policies.  *Everett*, 162 Cal.App.4th at 656-658 (rejecting insured's

15   claim that State Farm had to pay the entire replacement cost of her home destroyed by fire without

16   respect to policy limits); *Hackethal v. National Casualty Co.*, 189 Cal.App.3d 1102, 1109 (1987)

17   ("It is, of course, well established that an insurer has a right to limit the policy coverage in plain

18   and understandable language, and is at liberty to limit the character and extent of the risk it

19   undertakes to assume.").

20       In addition, Plaintiffs seek to compel State Farm "to provide 'Truth in Insurance'

21   disclosures at policy issuance, so that insureds understand the basis of the policy, the level of

22   insurance and the maximum coverage afforded by the policy."  (SAC, p. 44, Prayer ¶ 8(e)).  But

23   the law already requires State Farm to provide residential policyholders with a declarations page

24   and the Disclosure, which address all of those issues.  Thus, their request for injunctive relief is

25   entirely unnecessary, would conflict with or duplicate California law requirements, and is

26   unavailable under the UCL.

27

28

**E.**     <u>The Unfair Insurance Practices Act Claim Fails (Count 9)</u>

The claim for violation of Insurance Code section 790.03 fails because California courts have long held that "neither the Insurance Code nor regulations adopted under its authority provide a private right of action." *Rattan v. United Servs. Auto Ass'n*, 84 Cal.App.4th 715, 724 (2001); *Moradi-Shalal v. Fireman's Fund Ins. Co.*, 46 Cal.3d 287, 305 (1988) (holding that there is no private right of action for violation of Insurance Code section 790.03); *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1307-1308 (S.D. Cal. 2003) (dismissing claims for alleged violation of Section 790.03 with prejudice).

**F.**     <u>Plaintiffs' Antitrust Claims Fall Short (Counts 8, 10, 11, & 12)</u>

    **1.**     <u>Plaintiffs Do Not Allege "Antitrust Injury"</u>

Plaintiffs purport to allege Counts 10, 11 and 12 under the Sherman Act. All of those claims are legally insufficient for multiple reasons, but they share one common defect – the failure to allege "antitrust injury." To bring any Sherman Act claim, a private plaintiff must suffer "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This "antitrust injury" requirement "ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *see also, Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, *13 (N.D. Cal. 2009) ("The antitrust laws are intended to prevent harm to competition manifested as higher prices, lower output, or decreased quality in the products within a defined market.").

Here, the harm alleged is that resulting from Plaintiffs having purchased insufficient amounts of home insurance coverage. (SAC, ¶¶ 7, 15, 17, 22-26, 54, 71, 72, 77, 81-88). Plaintiffs do not claim they paid a supra-competitive price for that coverage, or obtained coverage lower in quality than they would have otherwise acquired for the same price absent an antitrust violation. Hence, the traditional, consumer-level forms of antitrust injury are simply not present. *See Stearns*, 2009 WL 1635931 at *13. But even if they were present and resulted from Plaintiffs' purchase of home insurance coverage, Plaintiffs expressly deny directing their Sherman Act

claims at the "field of insurance."  (SAC, ¶¶ 195, 198, 199, 208 (purporting to plead around the McCarran-Ferguson Act)).  In other words, they seek no private federal remedy for antitrust injury arising from any alleged restraint on competition for home insurance.

To the extent Plaintiffs separately seek to vindicate competition in "software system, methodology and data sets" or "data analytics" (SAC, ¶¶ 196, 199, 211), they nowhere allege that they purchased or licensed any software or data products, and so cannot have suffered antitrust injury resulting from any restraint on competition.  *See*, *e.g.*, *Or. Laborers-Employers Health & Welfare Fund v. Phillip Morris Inc.*, 185 F.3d 957, 966-67 (9th Cir. 1999) (finding no antitrust injury possible where plaintiffs were neither alleged consumers nor competitors in the relevant market).  No antitrust injury is alleged.

### 2.      Plaintiffs Do Not State a Section 1 Claim

Counts 10 and 12 purport to plead claims for "cartel" and "conspiracy" – presumably under Section 1 of the Sherman Act, 15 U.S.C. § 1.  To state a claim, a plaintiff must allege facts showing a "contract, combination, or conspiracy" between two or more persons in restraint of trade.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).  Here, the alleged conspirators are State Farm and Verisk, companies that are not horizontal competitors in the same market.[4]  At most, Plaintiffs suggests that a license exists between Verisk (or its affiliates) and State Farm by which Verisk grants State Farm the right to use its 360Value and Xactimate software.  (SAC, ¶¶ 40, 45, 49).  But an alleged agreement merely setting the terms of sale of a good or service between contracting parties does not, without more, show an actionable agreement within the meaning of the Sherman Act.  *Sausalito Pharmacy, Inc. v. Blue Shield*, 544 F.Supp. 230, 237 (N.D. Cal 1980).

Otherwise, the Second Amended Complaint merely asserts conclusions of law.  It alleges that State Farm and Verisk have "colluded and conspired" and are "in agreement," "combining,"

---

[4] According to Plaintiffs conclusory allegations, Verisk and its affiliates are "purveyors of … digital databases of home construction information" (SAC, ¶ 45) and participate in the "construction cost data" market (SAC, ¶ 202).  State Farm, on the other hand, is a "purveyor of insurance" (SAC, ¶ 46) and participates in the "United States home insurance market" (SAC, ¶ 203).

and "[i]n effect . . . a vertical cartel."  (SAC, ¶¶ 9, 195-196, 209, 211).  But it is axiomatic that such conclusory labels cannot show plausible entitlement to relief.  *Twombly*, 550 U.S. at 554 (stating that federal pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a [Sherman Act] cause of action will not do").  Relying exclusively on these labels, Plaintiffs fail to allege even the most basic facts showing when and how cognizable conspiracy to restrain trade was formed, and by whom.  This is fatal.  *See Kendall v. VISA, U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (criticizing complaint for failing to "answer basic questions: who, did what, to whom (or with whom), where, and when?"); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F.Supp.3d 988, 995 (N.D. Cal. 2015) ("[S]imply alleging that [three companies] conspired is not a sufficient allegation of the 'who'" because the defendants "are large organizations, and Plaintiffs' bare allegation of a conspiracy would be essentially impossible to defend against").

Because State Farm and Verisk are not horizontal competitors, any conspiracy claims against them must meet the pleading requirements for vertical conspiracy claims.  Plaintiffs must, but fail to, satisfy the requirements to plead (1) a relevant product and geographic market, and (2) injury to competition in that market.  *Tanaka v. Univ. of So. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001).  State Farm does not sell Verisk products, and Verisk does not sell insurance.  Plaintiffs' vague allusions to "software, methodology and data sets," "the world of analytics," and a "system comprised of software products" (SAC, ¶¶ 195, 196, 209) do not meaningfully address, much less satisfy, the requirement to allege products or services that are reasonable economic substitutes, while excluding those that are not – a minimal requirement when pleading a relevant product market.  *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).  Plaintiffs also fail identify a relevant geographic market.  Nor do they describe how they are purchasers of such products.

Finally, Plaintiffs fail to plead that State Farm or Verisk possessed market power sufficient to render them (individually or jointly) capable of injuring competition in a relevant market.  *Menasha Corp. v. News Am. Mktg. In-Store*, 354 F.3d 661, 663 (7th Cir. 2004) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984)) ("The first requirement in every suit based

on the Rule of Reason is market power, without which the practice cannot cause those injuries (lower output and the associated welfare losses) that matter under the federal antitrust laws."). The Second Amended Complaint contains no direct market power allegations.  It merely identifies State Farm as "the largest insurance company in the U.S." (SAC, ¶¶ 28, 195) and Verisk as "a global, international corporation" (SAC, ¶¶ 10, 195), whose Xactimate software is "ubiquitous in the home insurance market" (SAC, ¶ 201).  Those allegations, however, do not show the share of any relevant market or markets that State Farm or Verisk, alone or together, control or possess relative to other competing firms, and so say nothing about market power.  Without other market power allegations, this silence is fatal.  *See Jefferson Parish*, 466 U.S. at 27 (observing that 30% market share is insufficient as a matter of law to confer market power).

Lacking adequate market and market power allegations, the Second Amended Complaint identifies no injury to competition in any market.  Plaintiffs point to no excluded competitors, no reduced market output, and no supra-competitive prices.  And although they claim that State Farm and Verisk are together "driving the field of insurance to exclusive use of this software system, methodology and data sets" and "creating an industry standard" (SAC, ¶¶ 195, 201), they allege no facts suggesting any "industry" movement to a "standard" is the result of anticompetitive rather than procompetitive conduct, and so do not show injury to competition.  *See Brantley*, 675 F.3d at 1198-99 (requiring that Section 1 allegations show actual foreclosure of competition); *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 812-13 (9th Cir. 1988) ("It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort.") (internal quotations and citations omitted).  No Section 1 claims are stated.

### 3.    Plaintiffs Fail to State a Section 2 Claim

Plaintiffs' so-called "Monopoly" claim (Count 11) also fails.  Section 2 of the Sherman Act establishes three offenses:  "monopolization," "attempted monopolization," and "conspiracy to monopolize."  15 U.S.C. § 2.  Although Plaintiffs fail to specify which among them the Second Amended Complaint purports to proceed upon, it fails to state a claim as to any.

To state a monopolization claim, a plaintiff must allege that the defendant "possessed monopoly power in the relevant market" and "willfully acquired or maintained that power through

1  exclusionary conduct." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir.

2  2004).  As with their Section 1 claim, Plaintiffs fail to allege facts showing a relevant market.

3  Their wholly conclusory "monopoly power" allegations in Paragraphs 202 and 203 are

4  insufficient.  *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 973 (9th Cir. 2008);

5  *see also Prime Healthcare Servs. v. SEIU*, 2013 WL 3873074, *15 (S.D. Cal. 2013) (rejecting

6  allegation that defendants were the "dominant force in the alleged relevant hospital markets" as

7  conclusory).[5]

8      Moreover, only the willful acquisition and maintenance of monopoly power by

9  anticompetitive means falls within Section 2's anti-monopolization prohibition.  Here, Plaintiffs

10  identify no exclusionary conduct which foreclosed competition in any relevant market, which is

11  the essence of monopolization conduct.  *See Image Technical Servs., Inc. v. Eastman Kodak Co.*,

12  125 F.3d 1195, 1208 (9th Cir. 1997) (noting that Section 2's "monopolization"  element requires

13  "the use of monopoly power to foreclose competition, to gain a competitive advantage, or to

14  destroy a competitor") (internal quotation marks omitted).[6]

15      **4.      Plaintiffs Do Not State a Cartwright Act Claim**

16      In Count 8, Plaintiffs purport to plead a claim under California's Cartwright Act, Cal. Bus.

17  & Prof. Code §§ 16700-16770.  That statute is patterned after Section 1 of the Sherman Act.

18  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1476-77 (9th Cir. 1986).  Thus, the legal analysis

19  applicable to Plaintiffs' Cartwright Act claim "mirrors the analysis under federal law."  *County of*

20  *Toulumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2011).  As a result, the

21  Cartwright Act claim fails for the same reasons as the Sherman Act § 1 claims.

22

---

23  [5] To the extent Plaintiffs purport to plead an "attempted monopolization" claim, that offense
24  requires facts showing a dangerous probability of success (ordinarily a market share greater than
   50%) and a specific intent to monopolize.  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438
   (9th Cir. 1995).  Plaintiffs omit such facts.  To the extent Plaintiffs purport to plead a "conspiracy
25  to monopolize" claim, they again fail because, like their purported Section 1 claims, Plaintiffs
   offer only conclusory labels of "conspiracy."  (*See, e.g.*, SAC, ¶ 3).
26
   [6] Plaintiffs use the phrase "predatory pricing" to State Farm's sale of home insurance policies but
27  make no serious effort to plead facts showing that a predatory pricing theory is a plausible or
   coherent basis for Section 2 liability.  (SAC, ¶¶ 203-205).  For example, no facts show that State
28  Farm charged a price for insurance coverage below an appropriate measure of its cost.  *See Brooke*
   *Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993).

Count 8 also cites to a specific Cartwright Act provision, Bus & Prof. Code § 16727.  That section addresses exclusive dealing and tying arrangements as to "tangible goods."  *Feitelson v. Google Inc.*, 80 F.Supp.3d 1019, 1033-34 (N.D. Cal. 2015).  But Plaintiffs identify no exclusive dealing or tying arrangement, let alone to a tangible good that is subject to Section 16727. In fact, Plaintiffs **negate** any such arrangement by alleging that Verisk provides its "construction cost data" to State Farm "and the insurance industry market as a whole."  (SAC, ¶ 202).

Count 8 also points to a provision of California's Unfair Practices Act, Cal. Bus. & Prof. Code § 17043 ("UPA"), which prohibits selling a product below cost "for the purpose of injuring competitors or destroying competition."  (SAC, ¶ 182).  The UPA requires a plaintiff to allege that the defendant sold goods at a price below its "fully allocated cost."  *See Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2013 WL 5694452, *17 (N.D. Cal. 2013).  A plaintiff must also "allege [a] defendant's sales price, its cost in the product and its cost of doing business" to plead a claim under this section.  *A White and Yellow Cab, Inc. v. Uber Techs., Inc.*, 2017 WL 1208384, **11-12 (N.D. Cal. 2017) (dismissing Section 17043 claim because "Plaintiff has not alleged *any* facts regarding [the defendants'] prices, the costs of their product, or their costs of doing business") (citation omitted).  In support of their UPA claim, Plaintiffs do not allege State Farm sold insurance coverage to Plaintiffs at a price below State Farm's fully allocated cost, nor do they allege any facts regarding Verisk's sales prices or costs.  Rather, they allege only that State Farm "could not possibly recoup its cost for actual replacement coverage for all of the individual policies issued, if they were indeed issued at the correct replacement value."  (SAC, ¶ 183).  That is not a below-cost allegation, much less one conforming to the UPA's specific below "fully allocated cost" test.

## G.   Plaintiffs' "California Products Liability Act" Claim Fails (Count 13)

Finally, Plaintiffs' claim for "Violation of California's Products Liability Act" fails because there is no "California Products Liability Act."  Plaintiffs do not identify any actual statute under which they purport to bring this claim.  Even if their liability theory were clear, it would fail because California courts reject that insurance is a "good" or "service" subject to a products liability action.  *Fairbanks v. Superior Court*, 46 Cal.4th 56, 61 (2009) (life insurance is a

contract of indemnity, not a "good" or "service" subject to the Consumer Legal Remedies Act ("CLRA")); *see also Civil Service Employers Ins. Co. v. Superior Court*, 22 Cal.3d 362, 376 (1978); *Broberg v. Guardian Life Ins. Co.*, 171 Cal.App.4th 912, 924-925 (2009) ("[I]nsurance is not a 'good' or 'service' subject to the CLRA.").

Similarly, Verisk's software is not a "good" or "service" subject to a products liability claim.  *Rojas-Lozano v. Google, Inc*., 159 F.Supp.3d 1101, 1116-17 (N.D. Cal. 2016) (one-time use software not a "good" and noting that it was unaware of any court holding "that software utilized entirely online constitutes a CLRA good or service"); *In re Iphone App. Litigation*, 844 F.Supp.2d 1040, 1070 (N.D. Cal. 2012) ("to the extent Plaintiffs' allegations are based solely on software, Plaintiffs do not have a claim under the CLRA"); *compare Ladore v. Sony Computer Entm't Am., LLC*, 75 F.Supp.3d 1065, 1073 (N.D. Cal. 2014) (allowing claim to proceed based on "the critical fact that [plaintiff] did not simply buy or download (arguably) intangible software, or otherwise play an online game" but instead "went to a brick-and-mortar store (Best Buy) where he paid for and received a tangible product—namely the Killzone game disc….").

In addition, State Farm joins in Verisk's Motion to Dismiss as it relates to this Count.

## V.

## CONCLUSION

For all of the forgoing reasons, State Farm respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Second Amended Complaint *without* leave to amend.

Dated: March 8, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
*/s/ Frank Falzetta*
FRANK FALZETTA
JEFFREY S. CROWE
JENNIFER M. HOFFMAN
Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY