1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    BRIAN SHEAHAN, et al.,                    Case No.  18-cv-06186-EMC

8                    Plaintiffs,

9            v.                                **ORDER GRANTING DEFENDANTS'
                                               MOTIONS TO DISMISS**
10   STATE FARM GENERAL INSURANCE
     COMPANY, et al.,                          Docket Nos. 34, 36
11
                    Defendants.
12

13

14        Plaintiffs are Brian and Alison Sheahan (collectively, the "Sheahans"), Douglas Pope, and

15   Neil and Sandra Wylie (collectively, the "Wylies").  They have filed a class action against State

16   Farm General Insurance Company ("State Farm") as well as three additional companies that are

17   affiliated with one another, namely, Verisk Analytics, Inc.; Insurance Services Office, Inc.; and

18   Xactware Solutions, Inc. (collectively, the "Verisk Defendants").[1]  The gist of the operative class

19   action complaint is that (1) Plaintiffs and others similarly situated purchased homeowners

20   insurance policies from State Farm and that (2) State Farm, using software developed by the

21   Verisk Defendants, undervalued the replacement cost of Plaintiffs' homes when issuing the

22   policies.  After Plaintiffs' homes were destroyed during the October 2017 Northern California

23   wildfires, they did not have enough money from the policies to rebuild their homes.  Currently

24   pending before the Court are two motions to dismiss: one filed by State Farm and the other filed

25   by the Verisk Defendants.

26

27
     _____

28   [1] *See* SAC ¶ 39 (alleging that "Insurance Services Office, Inc. and Xactware Solutions, Inc. are
     subsidiaries of Verisk Analytics, Inc.").

1    Having considered the parties' briefs and accompanying submissions, as well as the oral

2 argument of counsel, the Court hereby **GRANTS** both State Farm and the Verisk Defendants'

3 motions to dismiss; however, Plaintiffs have leave to amend as to certain claims, as discussed

4 below.

5    **I.    FACTUAL & PROCEDURAL BACKGROUND**

6    In the operative second amended complaint ("SAC"), Plaintiffs allege as follows.

7    "State Farm is the largest property and casualty insurance provider in the United States."

8 SAC ¶ 28.  Plaintiffs all purchased homeowners insurance policies from State Farm.  *See* SAC ¶¶

9 43-44.  State Farm uses software provided by the Verisk Defendants in conjunction with its

10 homeowners insurance policies.  *See* SAC ¶ 23.  More specifically, the Verisk Defendants provide

11 two software products to State Farm:

12        (1) 360 Value, which is a zip code calculator used to determine the initial insurance

13            policy value, and

14        (2) Xactimate, which is used to determine the cost to rebuild or repair property after a

15            loss.

16 *See* SAC ¶¶ 23, 45.

17    According to Plaintiffs, "with detailed inventory and input, including a site visit to

18 document the insured property . . . , 360 Value can deliver an accurate result," but, "without

19 detailed input[,] it gives [only] a generic, tract-home type cost valuation."  SAC ¶ 49.  The latter

20 generally leads to an underinsured home.  *See* SAC ¶ 49.

21    Xactimate is used after a loss to calculate the cost of rebuilding or repairing a home.

22 Similar to above, Xactimate "may be used . . . to arrive at a valuation within a 10% margin of error

23 for construction estimation."  SAC ¶ 52.  However, "Xactimate is based on manufactured home

24 data, such as trailers and prefabricated homes, to price houses like a kit of parts"; therefore, unless

25 used correctly, Xactimate "does not represent the true cost to rebuild homes in Northern

26 California."  SAC ¶ 50.

27    Plaintiffs allege that State Farm used 360 Value to determine their initial insurance policy

28 limits.  *See* SAC ¶ 57.  But because Plaintiffs "were never specifically interviewed about the

qualities of their [homes]," 360 Value did not yield an accurate result; accordingly, Plaintiffs' homes were underinsured and, after the wildfires, the policies did not give Plaintiffs enough money to rebuild their homes.  SAC ¶ 84.  "By underinsuring homeowners [such as Plaintiffs], State Farm has been able to lower the rates on their policy premiums [and] attract a greater volume of business . . . ."  SAC ¶ 21; *see also* SAC ¶ 27.

According to Plaintiffs, State Farm represents that 360 Value is a tool that can accurately and reliably be used in setting insurance policy value.  For example:

- In its website, State Farm states: "The most appropriate way to estimate the replacement cost of your home is to hire a building contractor or other building professional to produce a detailed replacement cost estimate.  Or your State Farm agent can utilize an estimating tool from Xactware Solutions [*i.e.*, a Verisk Defendant] to assist you with an estimate."  SAC ¶ 55.  Plaintiffs suggest that the second sentence above indicates that the 360 Value estimate is just as reliable as an estimate provided by a building contractor.

- Plaintiffs also assert that the "behavior" of State Farm agents indicates that 360 Value "is accurate and can be relied upon to determine policy limits."  SAC ¶ 58.  No specifics, however, are given on what this alleged "behavior" is.

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following claims for relief (against both State Farm and the Verisk Defendants, unless otherwise noted):

(1) Breach of the implied covenant of good faith and fair dealing (State Farm only).

(2) Fraud – intentional misrepresentation.

(3) Fraud – false promise.

(4) Negligent misrepresentation.

(5) Negligence.

(6) Reformation of insurance policies (State Farm only).

(7) Violation of California Business & Professions Code § 17200.

(8) Violation of the California Cartwright Act.

(9) Violation of California Insurance Code § 790.03.

United States District Court
Northern District of California

1      (10)    Violation of the federal Sherman Act – "Cartel."

2      (11)    Violation of the federal Sherman Act – "Monopoly."

3      (12)    Violation of the federal Sherman Act – "Conspiracy."

4      (13)    Violation of California Products Liability Act.

## II.    <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

> To survive a [12(b)(6)] motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), [a plaintiff's] factual allegations [in the complaint] "must . . . suggest that the claim has at least a plausible chance of success." In other words, [the] complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

> . . . . [The Ninth Circuit has] settled on a two-step process for evaluating pleadings:

>> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014).

Notably,

> [t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'"

*Iqbal*, 556 U.S. at 678.

B.   <u>First Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The first cause of action – for breach of the implied covenant of good faith and fair dealing – has been asserted against State Farm only. Plaintiffs allege that State Farm breached the implied

*United States District Court*
*Northern District of California*

4

covenant because: (1) "Plaintiffs contracted with State Farm [to] obtain[] coverage sufficient to cover the total replacement and/or rebuild cost of [their] homes to pre-loss condition in the event of loss," SAC ¶ 93; (2) "State Farm promised to use its zip code calculator software [*i.e.*, 360 Value] to calculate replacement costs in such a way as they would be reasonably accurate," SAC ¶ 94; and (3) "State Farm has failed to pay out amounts sufficient to cover the total rebuild costs of Plaintiffs' homes, which is akin to denying [them] the benefit of their bargain." SAC ¶ 98.

In its motion, State Farm argues that the claim should be dismissed because the duty of good faith and fair dealing does not extend beyond the terms of an insurance contract and, here, Plaintiffs have not alleged that State Farm frustrated their right to receive the benefits of their insurance contracts; instead, Plaintiffs' theory is that "State Farm failed to pay *more* than [the] policy limits." Reply at 7 (emphasis in original).

State Farm is correct. The California Supreme Court has rejected the argument that

> the implied covenant [of good faith and fair dealing] can impose substantive terms and conditions beyond those to which the contract parties actually agreed. . . . The covenant of good faith and fair dealing, implied by law in every contract, exists merely to *prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.* The covenant thus cannot "'be endowed with an existence independent of its contractual underpinnings.'" *It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.*

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000) (emphasis added).

The above principle, although articulated in an employment case, applies equally to an insurance case. That is, the implied covenant of good faith and fair dealing does not "'extend[] beyond the terms of the insurance contract in force between the parties. . . . The carrier's duty is to deal in good faith and fairly in discharging duties under the contract.'" *Hellinger v. Farmers Grp.*, 91 Cal. App. 4th 1049, 1068 (2001); *see also Tilbury Constructors, Inc. v. State Comp. Ins. Fund*, 137 Cal. App. 4th 466, 474 (2006). In the insurance context, "where no benefits are withheld or delayed, there is no cause of action for the breach of the covenant of good faith and fair dealing." *Progressive W. Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 278 (2005); *see also Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235-36 (2008) (stating that "there can be no

breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy"; but adding that "'an insurer that pays the full limits of its policy may be liable for breach of the implied covenant[] if improper claims handling causes detriment to the insured'" – *e.g.*, delayed payment).

As State Farm argues, in the instant case, Plaintiffs have not alleged that they have been *denied* any benefits as provided for under the insurance contracts or that benefits have been *delayed*. Rather, Plaintiffs' complaint is that State Farm represented that it would give them "true" replacement coverage but failed to do so, with the insurance contracts leaving them in an underinsured position. The shortfall stems from the express terms of contract, not from the implementation of its terms. While Plaintiffs may have a claim for fraud or negligence as a result, they have not stated a claim for breach of the implied covenant.

In their opposition, Plaintiffs claim that they have alleged that they were underpaid under the terms of their insurance contracts. *See* Opp'n at 8. But tellingly, Plaintiffs have not cited any paragraph from the SAC to support their position.

Accordingly, Plaintiffs' claim for breach of the implied covenant is dismissed. The Court, however, shall give Plaintiffs leave to amend, if they can do so in good faith, given Plaintiffs' representation that they can provide specific examples of alleged underpayment inconsistent with the terms of the contract.

C.   Second, Third, Fourth, and Sixth Causes of Action: Fraud/Intentional Misrepresentation, Fraud/False Promise, Negligent Misrepresentation, and Reformation of Insurance Policies

The second, third, fourth, and sixth causes of action are all predicated on misrepresentations, either fraudulent or negligent. The basic thrust of these claims is that State Farm misrepresented that 360 Value and/or Xactimate could provide accurate calculations (for determining insurance policy value and replacement cost, respectively). *See, e.g.*, SAC ¶¶ 104-05 (second cause of action for fraud/intentional misrepresentation); SAC ¶ 161 (sixth cause of action for reformation of insurance policies). All of the misrepresentation claims, except for the sixth (reformation of insurance policies), have been asserted against both State Farm and the Verisk Defendants. Both State Farm and the Verisk Defendants have moved to dismiss the

1   misrepresentation claims.

2        1.   State Farm

3        In its motion to dismiss, State Farm challenges the misrepresentation claims on multiple

4   grounds.  One of State Farm's main arguments is that Plaintiffs have failed to allege actual

5   reliance (*i.e.*, on the representation that 360 Value could accurately and reliably determine

6   insurance policy value).[2]  State Farm notes, for example, that Plaintiffs have not alleged that they

7   ever saw the statement on State Farm's website that

8            "[t]he most appropriate way to estimate the replacement cost of your
             home is to hire a building contractor or other building professional
9            to produce a detailed replacement cost estimate.  *Or your State
             Farm agent can utilize an estimating tool from Xactware Solutions
10           [i.e., a Verisk Defendant] to assist you with an estimate.*"

11  SAC ¶ 55 (emphasis added).  State Farm also points out that, although Plaintiffs indicated that the

12  "behavior" of State Farm agents suggests 360 Value "is accurate and can be relied upon to

13  determine policy limits," SAC ¶ 58, Plaintiffs never specified what that behavior was, as required

14  by Federal Rule of Civil Procedure 9(b).

15        Confronted with this problem, Plaintiffs have tried to recast their SAC.  In their opposition

16  brief, Plaintiffs assert that

17           they have never allege[d] that they relied on a 360 Value report, nor
             did they ever see one.  Rather, Plaintiffs allege that [State Farm's]
18           agents were either not trained or were trained (poorly) to create and
             rely on these zip code calculators in issuing policies.  Plaintiffs
19           requested copies of initial values and 360 Value reports after
             realizing their situation.  Although Agents failed to disclose the
20           reports or discuss any of the data entry upon which they were based
             at the beginning, *they asserted that the policy underwriting was
21           sound and based upon solid data*.  This intentional
             misrepresentation is what Plaintiffs relied upon in entering the
22           policy.

23  Opp'n at 10 (emphasis added; discussing claim for fraud/intentional misrepresentation).  The

24  problem for Plaintiffs is that the SAC as pled does not allege what Plaintiffs assert in the excerpt

25  from the opposition brief.  Moreover, even if the Court were to credit Plaintiffs' opposition brief,

26  it is too conclusory for Plaintiffs to claim that each of them was told by a State Farm agent that

27

28  ───────────────────
    [2] The parties agree that reliance is an element of each of the causes of action at issue.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "the policy underwriting was sound and based upon solid data."  Opp'n at 10.  Plaintiffs need to

2    allege with specificity what was told as to each of them in order to comply with Federal Rule of

3    Civil Procedure 9(b).  *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

4    (stating that, "[t]o satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and

5    how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly

6    fraudulent] statement, and why it is false'").

7         The Court therefore dismisses Plaintiffs' misrepresentation claims but with leave to

8    amend.  The Court acknowledges that State Farm has also challenged the misrepresentation claims

9    based on disclaimers contained in Plaintiffs' insurance policies (or required by the California

10   Insurance Code) and based on integration clauses contained in the insurance policies.  However,

11   the Court cannot assess these defenses without first having an understanding as to what the alleged

12   misrepresentations were in the first place.

13        2.    Verisk Defendants

14        Like State Farm, the Verisk Defendants make multiple arguments in support of dismissal

15   of the misrepresentation claims.  For purposes of this order, however, the Court need only address

16   one specific argument – *i.e.*, that Plaintiffs have failed to allege that the Verisk Defendants (as

17   opposed to State Farm) made any misrepresentation to Plaintiffs.  This argument has merit and

18   nothing in Plaintiffs' opposition specifically addresses the argument.

19        At best, Plaintiffs suggest that State Farm and the Verisk Defendants have conspired or

20   colluded to defraud Plaintiffs and other policyholders.  *See AREI II Cases*, 216 Cal. App. 4th

21   1004, 1021 (2013) (stating that "'[c]onspiracy is not a cause of action, but a legal doctrine that

22   imposes liability on persons who, although not actually committing a tort themselves, share with

23   the immediate tortfeasors a common plan or design in its perpetration'[;] [a] civil conspiracy 'must

24   be activated by the commission of an actual tort'").  But Plaintiffs have only asserted in

25   conclusory terms that State Farm and the Verisk Defendants engaged in some kind of conspiracy.

26   There are no concrete factual allegations to support the claim.  In fact, it is notable that Plaintiffs

27   have conceded in their SAC that 360 Value and Xactimate can be used to yield accurate results.

28   There is nothing to suggest that State Farm and the Verisk Defendants had an agreement pursuant

8

1   to which State Farm would use the software in a manner that would predictably yield inaccurate

2   results.  Indeed, nothing in the SAC even suggests that the Verisk Defendants knew (or should

3   have known) that State Farm used 360 Value or Xactimate in such a way as to yield inaccurate

4   results and encouraged State Farm to use the software in such a way.

5          Accordingly, the Court dismisses the misrepresentation claims against the Verisk

6   Defendants.  The dismissal is with leave to amend; however, Plaintiffs are admonished that, if

7   they are going to allege a conspiracy, the allegations must satisfy the specificity requisites of

8   *Twombly*/*Iqbal* and must be supported by good faith as required by Federal Rule of Civil

9   Procedure 11.

10  D.     Fifth Cause of Action: Negligence

11         In the fifth cause of action for negligence, Plaintiffs allege that "Defendants represented to

12  Plaintiffs that they had a software tool that could produce an estimate equal to that of a contractor

13  that could be relied upon to accurately calculate the costs of replacing or reconstructing Plaintiffs'

14  homes following a loss event."  SAC ¶ 148.  Given this allegation, the negligence claim is

15  duplicative of the claim for negligent misrepresentation and the Court need not entertain any

16  additional arguments made by State Farm and the Verisk Defendants (*e.g.*, that they owed no duty

17  to Plaintiffs).

18         As above, Plaintiffs are given leave to amend.

19  E.     Seventh Cause of Action: Violation of California Business & Professions Code § 17200

20         In the seventh cause of action, Plaintiffs allege a violation of California Business &

21  Professions Code § 17200.  Plaintiffs invoke all three prongs of § 17200 – *i.e.*, fraudulent,

22  unlawful, and unfair conduct.

23         To the extent Plaintiffs claim fraudulent conduct, the analysis above for the

24  misrepresentation claims is applicable here.

25         To the extent Plaintiffs assert unlawful conduct, the SAC fails to state a claim for relief.

26  Plaintiffs claim that Defendants violated 10 California Code of Regulations § 2695.183 (titled

27  "Standards for Estimates of Replacement Value") but that regulation has no applicability to the

28  Verisk Defendants because they are not insurance companies and, further, is not applicable to

9

1    State Farm because the regulation did not go into effect until June 2011 and Plaintiffs have not

2    alleged that there was a noncompliant estimate after the regulation went into effect.

3         To the extent Plaintiffs allege unfair conduct because State Farm did not include certain

4    expenses in its estimate (*i.e.*, regardless of what § 2695.183 requires), that claim is not facially

5    implausible but is viable against State Farm only.

6         Accordingly, the bulk of Plaintiffs' § 17200 claim, as currently pled, is problematic.

7    Moreover, some of the remedies Plaintiffs' seek for the § 17200 claim are problematic.  For

8    example, Plaintiffs ask that their insurance claims be "adjust[ed] . . . without respect to the policy

9    limits set forth in their homeowners insurance policies."  SAC ¶ 178.  This request for an

10   adjustment amounts to a request for monetary damages, which is not cognizable for a violation of

11   § 17200.  *See, e.g.*, *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 226 (2012) (stating

12   that "[t]he scope of the remedies available under the UCL . . . is limited"; because "[a] UCL action

13   is equitable in nature . . . [,] damages cannot be recovered" and a plaintiff is "generally limited to

14   injunctive relief and restitution") (internal quotation marks omitted); *see also Saitsky v. DirecTV,*

15   *Inc.*, No. CV 08-7918 AHM (CWx), 2009 U.S. Dist. LEXIS 134817, at *5 (C.D. Cal. Sep. 22,

16   2009) (stating that "[r]emedies for private individuals bringing suit under the UCL are limited to

17   restitution and injunctive relief" and that, "[i]n the context of the UCL, restitution is limited to the

18   return of property or funds which the plaintiff has an ownership interest (or is claiming through

19   someone with an ownership interest)") (internal quotation marks omitted).  Also, to the extent

20   Plaintiffs ask for an order "compelling State Farm to provide 'Truth in Insurance' disclosures at

21   policy issuance, so that insureds understand the basis of the policy, the level of insurance and the

22   maximum coverage afforded by the policy," SAC, Prayer for Relief ¶ 8(e), the relief is

23   inappropriate for two reasons: (1) the request invades areas that are more appropriate for the

24   California legislature, *cf. Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 138

25   (1997) (stating that "[t]he question of what type or level of [insurance] regulation is adequate or

26   appropriate is uniquely a question for executive or legislative policy choice"; adding that

27   plaintiff's "complaints are . . . properly directed either to the Department of Insurance or to the

28   Legislature"), and (2) the request is largely unnecessary or moot because California law already

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1   provides for such relief through California Insurance Code § 10101 *et seq. See* Cal. Ins. Code §

2   10101 (providing that "no policy of residential property insurance may be first issued or . . . .

3   initially renewed in this state by any insurer unless the named insured is provided a copy of the

4   California Residential Property Insurance disclosure statement as contained in Section 10102").

5   F.      Ninth Cause of Action: Violation of California Insurance Code § 790.03

6           In the ninth cause of action, Plaintiffs assert a violation of California Insurance Code §

7   790.03, which provides that certain conduct constitutes "unfair methods of competition and unfair

8   and deceptive acts or practices in the business of insurance." Cal. Ins. Code § 790.03.  According

9   to Plaintiffs, State Farm has violated § 790.03(a), (b), (c), and (h).  *See id.* § 790.03(a) (referring to

10  the making of "any estimate . . . or statement misrepresenting the terms of any policy issued or to

11  be issued or the benefits or advantages promised thereby"); *id.* § 790.03(b) (referring to the

12  making or dissemination of "any statement . . . with respect to the business of insurance . . . which

13  is untrue, deceptive, or misleading, and which is known, or which by the exercise of reasonable

14  care should be known, to be untrue, deceptive, or misleading"); *id.* § 790.03(c) (referring to the

15  entering of "any agreement to commit . . . any act of boycott, coercion, or intimidation resulting in

16  or tending to result in unreasonable restraint of, or monopoly in, the business of insurance"); *id.* §

17  790.03(h) (referring to "a general business practice [of] any of the following unfair claims

18  settlement practices: (1) Misrepresenting to claimants pertinent facts or insurance policy

19  provisions relating to any coverages at issue," etc.).

20          In their motions, Defendants argue that the § 790.03 claim should be dismissed because §

21  790.03 does not give rise to a private cause of action.  Defendants are correct.  *See Moradi-Shalal*

22  *v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 305 (1988) (stating that "nothing we hold herein

23  would prevent the Legislature from creating additional civil or administrative remedies, including,

24  of course, creation of a private cause of action for violation of section 790.03" but "thus far the

25  Legislature has not manifested an intent to create such a private cause of action"); *see also*

26  *Copelan v. Infinity Ins. Co.*, 728 F. App'x 724, 726 (9th Cir. 2018) (stating that § 790.03 "does not

27  authorize a private cause of action"); *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013)

28  (stating that, "[w]hen the Legislature enacted the [Unfair Insurance Practices Act, § 790 *et seq.*], it

11

1   contemplated only administrative enforcement by the Insurance Commissioner").

2       In their opposition, Plaintiffs do not directly address the above authority, simply stating

3   that they

> are in communication with various politicians, local[,] state, and
> national representatives, and the Attorney General for California and
> another state to discuss these issues.  [They] ask for additional time
> to complete diligence with these officials, to September 1, 2019, to
> get a final answer whether the Attorney General of California will
> join in this action.

8   State Farm Opp'n at 22.  That request is denied.  If the state or the Insurance Commissioner

9   wishes to take action against State Farm, then it or he/she may do so but Plaintiffs have no private

10  right of action and there is no reason to delay dismissing their claim.

11  G.      Thirteenth Cause of Action: Violation of California Products Liability Act

12      In the thirteenth cause of action, Plaintiffs assert a violation of the so-called "California

13  Products Liability Act."  Plaintiffs claim both defective design and a failure to warn.  According to

14  Plaintiffs, "State Farm designed and sold a defective insurance product, which was inherently a

15  defective product, at the time that the insurance policy was issued, because it used [the Verisk

16  Defendants'] defective data and software."  SAC ¶ 214; *see also* State Farm Opp'n at 24 (arguing

17  that the software is "defective" because it do[es] not and cannot provide consistent and reliable

18  data").  In addition, State Farm "failed to warn [of] the potential risk of not covering the

19  policyholder's actual cost to rebuild following a total loss of home."  SAC ¶ 217.

20      As an initial matter, the Court dismisses the claim because there is no "California Products

21  Liability Act."  Moreover, even if the Court were to construe the claim as one under the common

22  law, the claim is still not viable.  As alleged, 360 Value and Xactimate are, in and of themselves,

23  not defective.  The SAC concedes these tools can yield accurate results if properly employed.

24  Plaintiffs' criticism concerns how State Farm uses the software to achieve underinsurance.  In

25  addition, "a products liability action may be brought only by one who has already suffered a

26  physical injury to his or her person of property, and the plaintiff in a products liability action is

27  limited to recovering damages for such physical injuries."  *Cty. of Santa Clara v. Atl. Richfield

28  Co.*, 137 Cal. App. 4th 292, 310 (2006).  Here, Plaintiffs are not claiming physical injuries to

12

United States District Court
Northern District of California

1    themselves or to their properties, but rather are asserting economic loss.  *See Jimenez v. Superior*

2    *Court*, 29 Cal. 4th 473, 482 (2002) (stating that "[d]amages available under strict products liability

3    do not include economic loss, which includes damages for inadequate value, costs of repair and

4    replacement of the defective product or consequent loss of profits – without any claim of personal

5    injury or damages to other property") (internal quotation marks omitted); *Sacramento Reg'l*

6    *Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 293 (1984) (stating that, "where damage

7    consists solely of 'economic losses,' recovery on a theory of products liability is precluded").

8    Given the above, the Court need not address Defendants' arguments that products liability law

9    does not apply to insurance and/or software.  The claim is dismissed with prejudice.

10   H.    Eighth, Tenth, Eleventh, and Twelfth Causes of Action: Violation of the California

11         Cartwright Act and the Federal Sherman Act (Cartel, Monopoly, and Conspiracy)

12         The eighth, tenth, eleventh, and twelfth causes of action are antitrust claims brought

13   pursuant to state and federal law – respectively, the Cartwright Act and the Sherman Act.

14   Plaintiffs label the three Sherman Act claims as "cartel," "monopoly," and "conspiracy," although

15   it is not clear why; the Sherman Act provides for two causes of action, one under 15 U.S.C. § 1

16   and the other under § 2.  *See* 15 U.S.C. § 1 (providing that that "[e]very contract, combination in

17   the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

18   States, or with foreign nations, is hereby declared to be illegal"); *id.* § 2 (imposing liability on

19   "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any

20   other person or persons, to monopolize any part of the trade or commerce among the several

21   States, or with foreign nations").

22         1.    Allegations in the SAC

23         The allegations in the SAC with respect to the antitrust claims are far from a model of

24   clarity.  However, Plaintiffs' position seems to be as follows: State Farm has engaged in predatory

25   pricing, which is part of a conspiracy with the Verisk Defendants.  State Farm deliberately sells

26   inadequate homeowners insurance (*i.e.*, not enough to cover "true" replacement cost) so that it can

27   offer a product cheaper than that offered by the competition.  Because the insurance is cheaper,

28   State Farm can sell at a greater volume.  Although Plaintiffs make reference to State Farm selling

United States District Court
Northern District of California

1   insurance "below cost," *see, e.g.*, SAC ¶¶ 182-83, it does not appear that Plaintiffs are using that

2   phrase in its ordinary sense – *i.e.*, State Farm selling insurance at a price cheaper than what it

3   actually costs.  Rather, Plaintiffs seem to be using "below cost" to refer to State Farm's alleged

4   practice of selling *inadequate* insurance, which allows it to sell insurance at a cheaper price

5   compared to insurance offered by other companies (which presumably offer "true" replacement

6   cost at a higher price).

7          If the Court considers only those allegations in the SAC, then there are various reasons

8   why the antitrust claims are deficient.  For example, for the Cartwright Act claim:

9   - Plaintiffs indicate that the Cartwright Act claim is based on California Business &

10    Professions Code § 16727.  Section 16727 provides in relevant part that "[i]t shall

11    be unlawful for any person . . . to fix a price charged [for goods], or discount from .

12    . . such price, on the condition, agreement or understanding that the . . . purchaser

13    thereof shall not use or deal in the goods . . . or services of a competitor or

14    competitors of the . . . seller, where the effect of such . . . sale . . . or such condition,

15    agreement or understanding may be to substantially lessen competition or tend to

16    create a monopoly in any line of trade or commerce in any section of the State."

17    Cal. Bus. & Prof. Code § 16727.  Given the text of the statute, the statute does not

18    appear to have any application to the instant case.  For example, Plaintiffs have not

19    alleged in the SAC that State Farm is fixing a price for its insurance on the

20    condition that a homeowner not use or deal in the goods or services of a

21    competitor.  Nor have Plaintiffs alleged that the Verisk Defendants are fixing a

22    price for their software on the condition that State Farm or another insurance

23    company not use or deal in the goods or services of a competitor.  *See also*

24    *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1033 (N.D. Cal. 2015) (noting that

25    "Section 16727 of the Cartwright Act is based on § 3 of the Clayton Act and has a

26    similar scope," and "Section 3 of the Clayton Act prohibits tying and exclusive

27    dealings in the lease, sale, or contract for sale of 'goods, wares, merchandise,

28    machinery, supplies, or other commodities'").

United States District Court
Northern District of California

14

1
- Plaintiffs have suggested a Cartwright Act claim based on a statute that is *not* part

2 of the Act – namely, California Business & Professions Code which provides that

3 "[i]t is unlawful for any person engaged in business within this State to sell any

4 article or product at less than the cost thereof to such vendor, or to give away any

5 article or product, for the purpose of injuring competitors or destroying

6 competition."  Cal. Bus. & Prof. Code § 17043.  Aside from this problem, the claim

7 is flawed because, as noted above, it does not appear that Plaintiffs are using

8 "below cost" in its ordinary sense – *i.e.*, State Farm selling insurance at a price

9 cheaper than what it actually costs.  Rather, Plaintiffs seem to be using "below

10 cost" to refer to State Farm's alleged practice of selling *inadequate* insurance,

11 which allows it to sell insurance at a cheaper price compared to insurance offered

12 by other companies (which presumably offer "true" replacement cost at a higher

13 price).

14 Similarly, the §§ 1 and 2 Sherman Act claims are deficient[3]:

15
- For the §§ 1 and 2 claims, Plaintiffs have not clearly alleged what the relevant

16 market is (*e.g.*, insurance, data analytics, some combination of both?), nor have

17 Plaintiffs clearly alleged market power.  *See Newcal Indus. v. Ikon Office Sol.*, 513

18 F.3d 1038, 1044 (9th Cir. 2008) (stating that, "[i]n order to state a valid claim under

19 the Sherman Act, a plaintiff must allege that the defendant has market power within

20 a 'relevant market'[;] [t]hat is, the plaintiff must allege both that a 'relevant market'

21 exists and that the defendant has power within that market").  "Market power is the

22 ability to raise price profitability by restricting output.'"  *DocMagic, Inc. v. Ellie*

23 *Mae, Inc.*, 745 F. Supp. 2d 1119, 1136 (N.D. Cal. 2010).  "A plaintiff can show

24 market power directly, by establishing that the defendant, by actually reducing its

25 own output, raised market prices[] or indirectly, by showing that the defendant has

26 a dominant share of the market, that there are significant barriers to entry into that

27

28 [3] The Court does not address the Verisk Defendants' contention that the McCarran-Ferguson Act bars the Sherman Act claims because, even assuming the Act is not a bar, Plaintiffs' claims fail.

market, and that existing competitors cannot increase their production in the short run." *Id.*

- For the §§ 1 and 2 claims, it is not clear that Plaintiffs' assertion of predatory price fixing is viable given that they are not making an argument of "below cost" in the ordinary sense.

- For the §§ 1 and 2 claims, the SAC does not adequately allege a conspiracy between State Farm and the Verisk Defendants.  As noted above, the allegations of conspiracy are too conclusory.

- For the § 2 claim, Plaintiffs have not made any substantive allegations on the possession of monopoly power or the willful acquisition or maintenance of that power.  *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010) (stating that "[t]here are three essential elements to a successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury") (internal quotation marks omitted).  Monopoly power is "when a party has sufficient market power to exclude competition or control prices."  *DocMagic*, 745 F. Supp. 2d at 1136.

Finally, as to all the antitrust claims, Plaintiffs fail to allege any antitrust injury.  "Antitrust injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes the [antitrust] defendants' acts unlawful.'"  *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 U.S. Dist. LEXIS 2176, at *14 (N.D. Cal. Jan. 3, 2006).  In the SAC as pled, Plaintiffs suggest that State Farm's conduct has "disadvantag[ed] . . . other insurance companies not using [the Verisk Defendants'] software, methods and data," SAC ¶ 181, but, elsewhere in the pleading, Plaintiffs indicate that the Verisk Defendants do not limit distribution of their software tools to State Farm only.  *See* SAC ¶ 45 (alleging that the Verisk Defendants "have two software products which they provide to State Farm and other national insurers"); SAC ¶ 201 (alleging that "the Xactware construction cost estimating software has become ubiquitous in the home insurance market").  At oral argument, Plaintiffs reaffirmed that, because of the Verisk

16

1    Defendants' domination of the software tools market for insurance companies, virtually all

2    insurance companies are using their tools and causing consumers throughout the marketplace to

3    suffer underinsurance.  If so, as noted below, there is no injury to competitors of State Farm; the

4    other insurers are similarly situated.

5            Moreover, antitrust injury is injury that is suffered by competitors or consumers as a result

6    from anti-competitive monopolistic practices.  Here, Plaintiffs are neither.  They are not

7    competitors of State Farm or the Verisk Defendants.  They are not direct consumers of the Verisk

8    Defendants; any claim Plaintiffs might conceivably have as indirect purchasers of 360 Value and

9    Xactimate (factually a stretch) would be barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729-

10   30 (1977) (indicating that only direct purchasers, and not indirect purchasers, are injured by an

11   antitrust violation; indirect purchasers cannot claim antitrust injury on a theory that an overcharge

12   was passed on to them by the direct purchasers).  *See also Apple Inc. v. Pepper*, 139 S. Ct. 1514

13   (2019) (where iPhone owners sued Apple for unlawful monopolization of the aftermarket for

14   iPhone apps, holding that iPhone owners were direct purchasers from Apple under *Illinois Brick*).

15   The harm Plaintiffs (and other consumers) have suffered is not the anti-competitive result (such as

16   paying higher prices), of, *e.g.*, unlawful monopolistic power.  Rather, it stems from the misuse of

17   software and alleged misrepresentations by State Farm.  While this may constitute harm resulting

18   from, *e.g.*, breach of contract, misrepresentation, or negligence, it is not antitrust injury.

19           Accordingly, based on the allegations in the SAC, Plaintiffs have failed to state any

20   antitrust claim.

21           2.      Allegations in Opposition

22           Implicitly recognizing that the antitrust claims as pled are problematic, Plaintiffs have in

23   their opposition dramatically overhauled the factual predicate for their antitrust claims, and who is

24   harmed as a result.  Plaintiffs have effectively abandoned a Cartwright Act claim and tried instead

25   to assert Sherman Act claims only.  As discussed below, the overhauled Sherman Act claims – as

26   characterized in the opposition – are still deficient.

27           a.      Section 1 Claim

28           Plaintiffs now assert as the factual predicate for their § 1 claim that the Verisk Defendants

                                                17

1    and "the insurance industry in general," including State Farm, have an agreement "to restrain trade

2    by falsely estimating construction in a manner that affects domestic commerce." Opp'n (Verisk)

3    at 13. In other words, no longer are the Verisk Defendants and State Farm conspiring to the

4    detriment of State Farm's competition (*i.e.*, other insurance companies). Under their revised

5    theory, all of the insurance companies are conspiring with the Verisk Defendants to the harm of,

6    *e.g.*, contractors who lost business because they could not rebuild based on the limited insurance

7    proceeds available under the policies. *See* Opp'n (Verisk) at 13 (stating that "Sheahan's

8    contractor is available to testify that he engaged and then lost over $10-20 million in business

9    when clients could not afford to build due to insurance undervaluation and claims process

10   challenges").

11           Plaintiffs describe the conspiracy as a hub-and-spoke cartel. *See* Opp'n (Verisk) at 13-14;

12   *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010)

13   (explaining that a hub-and-spoke conspiracy "'involves a hub, generally the dominant purchaser or

14   supplier in the relevant market, and the spokes, made up of the distributors involved in the

15   conspiracy. The rim of the wheel is the connecting agreements among the horizontal competitors

16   (distributors) that form the spokes'"). An example of a hub-and-spoke conspiracy is where "a

17   vertical player participates in and facilitates a horizontal conspiracy" – *e.g.*, to fix prices. *See*

18   *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 690 (S.D.N.Y. 2013). According to Plaintiffs, in

19   the instant case, "Verisk is the hub of the cartel"; State Farm and other insurance companies are

20   spokes, *i.e.*, competing entities that have entered into vertical agreements with Verisk"; and "all

21   insurers utilizing Verisk tools are the rim of the cartel" who have horizontal agreements with one

22   another. Opp'n (Verisk) at 14.

23           The basic problem with Plaintiffs' hub-and-spoke conspiracy theory is that Plaintiffs'

24   assertion of a conspiracy – both vertical and horizontal – is entirely conclusory. *See Howard Hess*

25   *Dental*, 602 F.3d at 255 (stating that, "even assuming the Plaintiffs have adequately identified the

26   hub (Dentsply) as well as the spokes (the Dealers), we conclude that the amended complaint lacks

27   any allegation of an agreement among the Dealers themselves[;] [t]he amended complaint states

28   only in a conclusory manner that all of the defendants – Dentsply and all the Dealers included –

United States District Court
Northern District of California

18

conspired and knew about the alleged plan to maintain Dentsply's market position").  Plaintiffs suggest that a conspiracy may be inferred because (1) the Verisk Defendants require each insurance company who contracts with them to provide its construction and claim cost information which the Verisk Defendants then share with all contracting insurance companies, *see* Opp'n (Verisk) at 16 and (2) the contracting insurance companies are all able to pay out less if they use 360 Value to underinsure.  *See* Opp'n (Verisk) at 15.  But it is entirely speculative to assert there is an agreement among insurers to share information to their collective benefit with the purposes of harming the consuming public.  Indeed, at oral argument, Plaintiffs' counsel stated that different insurers use different algorithms to determine insurance value with some being more generous than others.  This is not emblematic of a conspiratorial agreement amongst insurers.  At most, Plaintiffs assert allegations *consistent* with conspiracy but, as the Supreme Court has made clear, that does not mean that a conspiracy is *plausible* under *Twombly*.  *See In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1208-09 (N.D. Cal. 2015) (noting that, per *Twombly*, "[a]t the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' i.e., it must provide 'some factual context suggesting [that the  parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement").

Moreover, even if Plaintiffs did adequately allege a conspiracy, it is far from clear what the purported restraint of trade is.  *See* 15 U.S.C. § 1 (providing that that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal").  And even if these deficiencies could be overcome, for the reasons stated above, it is not clear what the antitrust injury would be.

          b.     <u>Section 2 Claim</u>

For the § 2 claim, Plaintiffs now suggest that they have a claim for illegal monopoly against the Verisk Defendants and a claim for attempted monopolization against State Farm.  *See* Verisk Opp'n at 16.  Presumably, Plaintiffs assert illegal monopoly against the Verisk Defendants because they have ">85% market share," Opp'n (Verisk) at 16, but assert only attempted

United States District Court
Northern District of California

1    monopolization against State Farm because it has only "10.05% market share," although that is

2    "nearly double that of Berkshire Hathaway Group at 5.95% in the number two slot."  Opp'n

3    (Verisk) at 18.

4         "There are three essential elements to a successful claim of Section 2 monopolization: (a)

5    the possession of monopoly power in the relevant market; (b) the willful acquisition or

6    maintenance of that power; and (c) causal antitrust injury."  *Allied Orthopedic*, 592 F.3d at 998

7    (internal quotation marks omitted).  At the very least, the monopolization claim against the Verisk

8    Defendants is not viable because, *inter alia*, Plaintiffs have not explained how they acquired or

9    maintained monopoly power in an illegal way.  The fact that the Verisk Defendants have been

10   growing over the years in and of itself is not in and of itself an antitrust problem.  *See Verizon*

11   *Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S. Ct. 872, 879

12   (2004) (noting that the willful acquisition or maintenance of monopoly power must be

13   "'distinguished from growth or development as a consequence of a superior product, business

14   acumen, or historic accident'"; also stating that, "[t]o safeguard the incentive to innovate, the

15   possession of monopoly power will not be found unlawful unless it is accompanied by an element

16   of anticompetitive conduct") (emphasis omitted).  Moreover, as discussed above, Plaintiffs would

17   not appear to have standing given they are not direct purchasers of the Verisk Defendants'

18   products.

19        As for attempted monopolization, there are also three elements: "'(1) that the defendant has

20   engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a

21   dangerous probability of achieving monopoly power.'"  *Cascade Health Sols. v. PeaceHealth*, 515

22   F.3d 883, 893 (9th Cir. 2008).  The claim against State Farm for attempted monopolization fails,

23   *inter alia*, because Plaintiffs have not explained how there is a dangerous probability that State

24   Farm will achieve monopoly power, especially given what appears to be on its face limited market

25   power.  Moreover, the claim for attempted monopolization seems highly problematic given that

26   virtually all insurance companies (as indicated by Plaintiffs' SAC and as conceded at the hearing)

27   use the Verisk Defendants' software tools.

28        Finally, there continues to be the problem of the failure to allege antitrust injury.

1

3.      Summary

2

For the foregoing reasons, the Court dismisses the antitrust claims as pled in the SAC and

3

further finds the new "allegations" in Plaintiffs' opposition brief insufficient to support any

4

antitrust claim.  The Court, however, shall give Plaintiffs leave to amend their antitrust claims,

5

provided that they satisfy the specificity requisites of *Twombly/Iqbal* and the substantive

6

requirements of antitrust law, and their allegations are based on facts and made in good faith as

7

required by Federal Rule of Civil Procedure 11.

8

### III.      CONCLUSION

9

For the foregoing reasons, the Court rules as follows:

10

- Claim for breach of the implied covenant of good faith and fair dealing (against

11

  State Farm only).  The claim is dismissed but with leave to amend.

12

- Misrepresentation claims (fraudulent and negligent).  The claims against both State

13

  Farm and the Verisk Defendants are dismissed with leave to amend.

14

- Negligence claim.  The claim is dismissed as duplicative of the claim for negligent

15

  misrepresentation.  Plaintiffs have leave to amend.

16

- Section 17200 claim.  The claim based on fraudulent conduct is dismissed with

17

  leave to amend.  The claim based on unlawful conduct is dismissed with prejudice.

18

  The claim based on unfair conduct is viable but, based on the factual predicate, is

19

  sustainable as to State Farm only.  Plaintiffs have leave to amend the unfair conduct

20

  claim as to the Verisk Defendants.    Certain remedies sought by Plaintiffs for the

21

  alleged violation of § 17200 are not cognizable and are dismissed without leave to

22

  amend; but Plaintiffs are not barred at this juncture from seeking an order

23

  "enjoining Defendants from continuing" their alleged illegal conduct.  SAC ¶ 178.

24

- Claim for violation of § 790.03.  The claim is dismissed with prejudice.

25

- Product liability claim.  The claim is dismissed with prejudice, if only because of

26

  the economic loss rule.

27

- Antitrust claims.  The claims are dismissed with leave to amend.

28

United States District Court
Northern District of California

1     In short, at this juncture, the only viable claim Plaintiffs have is a claim for unfair conduct

2   pursuant to § 17200, which is asserted against State Farm only.  Plaintiffs shall file their amended

3   complaint by August 1, 2019.  The only amendments permitted at this juncture are those specified

4   above.

5     This order disposes of Docket Nos. 34 and 36.

6

7     **IT IS SO ORDERED**.

8

9   Dated: July 2, 2019

10

11   _____

12   EDWARD M. CHEN
     United States District Judge